[Filed June 9, 1892.]

## STATE OF OREGON *v.* E. P. ROGERS.

STATUTORY CONSTRUCTION—RAILROADS—LONG AND SHORT HAUL—REPEAL BY IMPLICATION.—The provisions of the act of February 20, 1885, making it unlawful for persons engaged in the transportation of freight to charge more for a shorter than for a longer haul of a similar kind or amount of property, etc., are by necessary implication repealed by the terms of the act of February 20, 1891, which empower the board of railroad commissioners to establish freight rates subject to revision by the courts in a procedure provided for in the latter act.

LEGISLATIVE JOURNALS—VALIDITY OF STATUTE—PRESUMPTION.—When it affirmatively appears from journals of the legislature that a bill as filed in the office of the secretary of state did not in fact pass the legislature, the courts will pronounce it invalid; but every reasonable presumption is to be made in favor of legislative proceedings; and when the constitution does not require certain matters to be entered in the journal, the absence of such a record will not invalidate a law.

Linn county: R. P. BOISE, Judge.

Defendant appeals. Reversed.

*W. D. Fenton,* for Appellant.

The act is made unlawful only when the shipment is domestic freight. The indictment should aver the amount of freight, or some amount of freight shipped, and the compensation charged; and when an agent is indicted, there should be an averment that the charges were made by authority of his principal. (Const. Oregon, art. 1, § 11; Bish. Stat. Cr. §§ 373, 385, 1039; 1 Bish. Cr. Proc. §§ 77, 104, 499, 592, 593; 1 Whar. Cr. Law, §§ 285, 288, 299, 304; *Hubbard* v. *State,* 11 Ind. 554; note to *State* v. *Campbell,* 94 Am. Dec. 253; *People* v. *Aro,* 6 Cal. 209; *State* v. *Bennett,* 11 S. W. Rep. 265, Mo. March 18, 1889; *State* v. *Butcher,* 79 Iowa, 110; *U. S.* v. *Carll,* 105 U. S. 612; *U. S.* v. *Hess,* 124 U. S. 487.)

The particular carload or quantity shipped, and the particular freight charged, in the particular case prosecuted, should be stated in the indictment. The corporate existence of the Southern Pacific Company and the partnership of Isom, Lanning & Co. should have been alleged and proven. (*People* v. *Schwartz,* 32 Cal. 160; Whar. Cr. Ev. § 102 a; *People* v. *Bogart,* 36 Cal. 248; *Wallace* v. *People,* 63 Ill. 452; *Jones* v. *State,* 5 Sneed, 346; *State* v. *Mead,* 27 Vt. 722.)

The indictment should have affirmatively charged that these shipments were domestic freight. (*State* v. *Godfrey,* 24 Me. 232; 41 Am. Dec. 382; *State* v. *Tamler,* 19 Or. 529; note to *State* v. *Campbell,* 94 Am. Dec. 255; *U. S.* v. *Cook,* 17 Wall. 176; *People* v. *Telford,* 56 Mich. 544; *State* v. *Abbey,* 29 Vt. 60; S. C. 67 Am. Dec. 757.)

An indictment charging a shipment from Albany to East Portland by Isom, Lanning & Co. at seven and one-half cents per hundred pounds, is not supported by proof of a shipment from Albany to Portland by same firm at nine and one-half cents per hundred pounds; and when the proof shows also that the rate charged from Millersburg to East Portland was eight and three-quarter cents per

hundred pounds, no crime is shown. (Whar. Cr. Ev. §§ 109–121; Greenl. Ev. § 65.)

The legislative assembly of the state had no power or authority to enact the statute in question; and as to this highway and as to this defendant, the act is in violation of the charter of the company owning the road, and in violation of the constitution of the United States, which prohibits the passage of any law impairing the obligation of contracts. (Morawetz, Corp. §§ 422–476, 1057–1075; Field, Corp. § 32; *Sloan* v. *Pacific R. R.* 61 Mo. 24; 21 Am. Rep. 397; *Pacific R. R.* v. *Maguire*, 20 Wall. 36; *Wilmington R. R.* v. *Reid*, 13 Wall. 268; *Miller* v. *State*, 15 Wall. 488; *Binghampton Bridge Case*, 3 Wall. 73; *State Freight Tax*, 15 Wall. 277; *P. W. & B. R. R. Co.* v. *Bowers*, 4 Houst. 506; *State* v. *Noyes*, 47 Me. 216; *New Orleans Gas Co.* v. *La. Light Co.* 115 U. S. 663; *Trustees Dartmouth College* v. *Woodward*, 4 Wheat. 638; *Boston etc. Corp.* v. *Salem etc. R. R. Co.* 2 Gray, 33; *Wales* v. *Stetson*, 2 Mass. 143; 3 Am. Dec. 39.)

There is no difference in principle between a contract created by express charter and a contract which arises where a corporation is created under a general law. (*Abbott* v. *Johnstown etc. Ry. Co.* 80 N. Y. 27; 36 Am. Rep. 572.)

It is conceded that the granting of power to a railroad company the right, from time to time, to regulate its own tolls and charges does not deprive the state of its power to act upon the reasonableness of the charges so fixed. (*Stone* v. *Wisconsin*, 94 U. S. 181; *Munn* v. *Illinois*, 94 U. S. 113; *Peik* v. *Chicago etc. Ry. Co.* 94 U. S. 165; *Ruggles* v. *Illinois*, 108 U. S. 529; *Spring Valley Water Works* v. *Shottler*, 110 U. S. 352; *R. R. Commission Cases*, 116 U. S. 307, 356; *Georgia Banking Co.* v. *Smith*, 128 U. S. 177; *Chicago etc. R. R. Co.* v. *Minnesota*, 134 U. S. 455.)

The defendant was entitled to show that the charges made for these shipments in question were reasonable in amount, and if so, he had a right to make them. (*Ex parte*

*Koehler,* 11 Saw. 37, 194; *Wells, Fargo & Co.* v. *O. R. & N. Co.* 8 Saw. 614.

Income and the right to earn it are essential attributes of private property, and the only limit to the use or enjoyment under a free government is that use expressed by the maxim *sic utere tuo ut alienum non laedas.* (*Commonwealth* v. *Essex Co.* 13 Gray, 239; 2 Ror. Railroads, 1368; *Hamilton* v. *Keith,* 5 Bush, 458; *A. & F. R. R. Co.* v. *Burkett,* 46 Ala. 569; 3 Wood's Railway Law, 1691; *Stone* v. *Yazoo & Miss. R. R. Co.* 62 Miss. 607; 52 Am. Rep. 193; *Morgan* v. *Louisiana,* 93 U. S. 223.)

The shipments made were interstate commerce. (*The Daniel Ball,* 10 Wall. 565.) The fact that several different and independent agencies are employed in transporting a commodity, some acting entirely in one state, and some acting through two or more states, does in no respect affect the character of the transaction, and to the extent in which agencies act in that transportation it is subject to the regulation of congress. (*Norfolk etc. R. R. Co.* v. *Pennsylvania,* 136 U. S. 119; *Wabash etc. R. R. Co.* v. *Illinois,* 118 U. S. 557.)

The judgment was erroneous because the law defining the crime permits unusual and unlimited punishment to be inflicted. The punishment prescribed by section 4036 of the code, and the clause conferring authority upon the court to impose the penalty, is in this language: * * * "upon conviction thereof be fined not less than one thousand dollars." It is a fundamental principle that in a criminal statute the legislature must define the punishment to be inflicted. The power to define the punishment is legislative and not judicial, and the power to define, prescribe, or place limits upon the punishment cannot be delegated to the courts. (Cooley's Const. Lim. 139.) The statute is void, not because the fine in this case was the minimum and a reasonable one, but because the law delegated to the court unlimited power in creating the penalty. (*Barker* v. *People,*

3 Cow. 703; Cooley's Const. Lim. 402, 403, 5 ed.; *In re Rosenheim*, 83 Cal. 388; *People* v. *Morris*, 80 Mich. 634.)

The law under which this prosecution was begun had been repealed before the trial, and hence the prosecution must fail. (Endlich Interp. Stat. §§ 478–484.) It is strange if the railroad commission has full power to fix the limit of all charges under the act of 1891, and yet that the act of 1885 is still in effect, which gives to the carrier the right to do the same thing, and requires him to do it, and keep it in force within certain limits. The two statutes cannot stand together, and upon a well settled rule the latter statute repeals the former by implication. (Suth. Stat. Const. §§ 138–166; Endlich Interp. Stat. §§ 187–241; *Stingle* v. *Nevel*, 9 Or. 62; *State* v. *Gaunt*, 13 Or. 115; *Little* v. *Cogswell*, 20 Or. 345.)

It appears that the yeas and nays were not ordered or taken, and that the final passage of this law, in so far as it relates to the bill as amended, was attempted without compliance with the requirement that every bill shall be read by sections, etc. (Article 4, section 19, const.; *Currie* v. *S. P. Co.* 21 Or. 566; *Rode* v. *Phelps*, 80 Mich. 609; *County of San Mateo* v. *S. P. R. R. Co.* 8 Saw. 238; S. C. 13 Fed. Rep. 767; *Spangle* v. *Jacoby*, 14 Ill. 297; S. C. 58 Am. Dec. 574; note to *Jones* v. *Jones*, 51 Am. Dec. 616; *Commissioners* v. *Higginbotham*, 17 Kan. 62; *People* v. *Com. of Highways*, 54 N. Y. 276; 13 Am. Rep. 581; *People* v. *Starne*, 35 Ill. 121; 85 Am. Dec. 348.

The state of Oregon has no power or authority to regulate fares and freights on the line in question. This road is a national highway, made so by act of congress, and those operating it are instruments of national power and authority. The right, therefore, to regulate and control the same in the respects named in the indictment, or in any respect, excepting those strictly pertaining to the exercise of the police power of the state, is exclusively one in the federal congress. (*California* v. *Pacific R. R. Co.* 127 U. S. 39; *Pacific R. R. Removal Cases*, 115 U. S. 18; *Robbins* v. *Shelby*,

120 U. S. 492; *Phila. S. S. Co.* v. *Pennsylvania,* 122 U. S. 338;
*U. S.* v. *U. P. R. R. Co.* 91 U. S. 79; *R. R. Co.* v. *Peniston,* 18
Wall. 34; *Collector* v. *Day,* 11 Wall. 127; *Osborne* v. *Bank of
U. S.* 9 Wheat. 867; *Van Brocklin* v. *Tennessee,* 117 U. S. 151.)

*Geo. E. Chamberlain,* attorney-general, and *Geo. G. Bing-
ham,* district attorney, for Respondent.

It is questionable if it is necessary to allege in the indictment
the name of the corporation at all.   If the indictment simply
alleged that at the time charged in the indictment the defend-
ant was the agent of a railroad corporation operating a road
in this state, the defendant is then brought within the plain.
purview of the statute.   But the indictment does allege·
the name of the railroad corporation, and no question is.
raised as to the correctness of the allegation of the corporate·
name.   On principle and on authority it is sufficient to name·
the corporation correctly, without alleging the incorpora-·
tion.   (Bish. Dir. and Forms, § 79; Bish. Crim. Proc. § 682;.
2 Bish. Crim. Proc. §§ 445, 455, 456; *McCarney* v. *People,,*
83 N. Y. 408; 38 Am. Rep. 456; *Noakes* v. *People,* 25 N. Y..
380; *Murphy* v. *State,* 36 Ohio St. 628; *Burke* v. *State,* 34.
Ohio St. 79.)

It has repeatedly held that an indictment is sufficient which·
charges the offense substantially in the language of the statute..
(*State* v. *Ah Sam,* 14 Or. 347; *State* v. *Dale,* 8 Or. 229; *State*
v. *Bergman,* 6 Or. 341; *State* v. *Carr,* 6 Or. 133; *State·* v..
*Wintzingerode,* 9 Or. 153; *Lechi* v. *Territory,* 1 W. T. 13;. 1
Bish. Crim. Proc. 611; 1 Whar. Crim. Law, § 364; *Barton*
v. *State,* 43 Am. & Eng. R. R. Cas. 334; *People* v. *Enoch,*
13 Wend. 172; 27 Am. Dec. 197.)

As to the form of indictment in such cases, see *U. S.* v..
*Michigan Cent. R. R. Co.* 43 Am. & Eng. R. R. Cas. 334;
*U. S.* v. *Tozer,* 37 Fed. Rep. 635; S. C. 39 Fed. Rep. 369, 904.)

It is contended by counsel that the·indictment is defect-.
ive in that it does not charge that the shipments were
domestic freight.   This is not necessary.   If upon the trial.

it had appeared that the freight was, as a matter of fact, interstate traffic, the defendant would have been entitled to an acquittal. As a matter of fact, however, the indictment does charge affirmatively that the freight was domestic freight, for it charges the place of destination as well as the point of beginning, both within the state. (*State* v. *Tamler*, 19 Or. 531; *Mills* v. *Kennedy*, 1 Bailey (S. C.), 17; 1 Bish. Crim. Proc. §§ 631, 633.)

It is not necessary to charge the defendant with having charged a fixed sum of money on a fixed and certain amount of grain. It is sufficient to charge a certain rate per hundred pounds for a similar kind of goods, and that the amount charged per hundred is more for the shorter than the longer haul. This the indictment specifically charges. (*Junod* v. *Chicago & N. Ry. Co.* 47 Fed. Rep. 295.)

Repeals by implication are not favored, and a subsequent affirmative statute does not repeal a prior one unless there is a direct and irreconcilable conflict between the two. (*Robbins* v. *State*, 8 Ohio St. 131; *McCartee* v. *O. A. Society*, 9 Cow. 437; 18 Am. Dec. 516; *State* v. *Woodside*, 9 Ired. 496; *McCool* v. *Smith*, 1 Black, 459; *Naylor* v. *Field*, 29 N. J. L. 287; *State* v. *Berry*, 12 Iowa, 58; *State* v. *Dupuis*, 18 Or. 372; *People* v. *S. F. etc. R. R. Co.* 28 Cal. 254; *Blain* v. *Bailey*, 25 Ind. 165; *People* v. *Barr*, 44 Ill. 198; *Supervisors* v. *Campbell*, 42 Ill. 490; *Hume* v. *Gossett*, 43 Ill. 297; *McLaughlin* v. *Hoover*, 1 Or. 31; Endlich Stat. Const. § 210; *State* v. *Benjamin*, 2 Or. 125; *State* v. *Dale*, 8 Or. 235; Cooley Const. Lim. 183; Potter's Dwar. Stat. 155.)

Counsel for defendant contends that the legislative assembly had no authority to enact the statute in question. But the power of the state to regulate the transportation of passengers and freight is too well settled by the courts to be seriously questioned. (*State Freight Tax Case*, 15 Wall. 232; *Munn* v. *Illinois*, 94 U. S. 113; *C. B. & Q. R. R. Co.* v. *Iowa*, 94 U. S. 155; *Peik* v. *Chicago etc. R. R. Co.* 94 U. S. 164; *Stone* v. *F. L. & T. Co.* 116 U. S. 307; *Gloucester Ferry Co.* v.

*Pennsylvania,* 114 U. S. 196; *Pickard* v. *Pullman Car Co.* 117 U. S. 34; *Wabash & C. R. R.* v. *Illinois,* 118 U. S. 563.)

BEAN, J.—The defendant, who is the assistant general freight agent of the Southern Pacific Company, was, in March, 1891, indicted by the grand jury of Linn county for a violation of section 4 of "An act to regulate the transportation of passengers and freight by railroad companies," commonly known as the "Hoult law," approved February 20, 1885, which reads as follows: "Section 4. That it shall be unlawful for any person engaged in the transportation of property as prescribed in the first section of this act, to charge or receive any greater compensation for a similar amount or kind of property for carrying, receiving, storing, forwarding, or handling the same for a shorter than a longer distance in the same direction." During the pendency of the prosecution, and before the trial in the court below, the act of February 20, 1891, (2 Hill's Code, 2 ed. 1967,) entitled "An act to increase the power and further define the duties of the board of railroad commissioners in respect to the management, operation, and control of railroads, and the transportation of persons and property within the state of Oregon," went into effect. Whereupon the defendant moved to quash the indictment and for his discharge, upon the ground that the act of 1891 operated as a repeal by implication of the provisions of the act of 1885, under which he was indicted. The motion was overruled, and the trial resulted in a verdict and judgment against the defendant, from which this appeal is taken.

The record contains numerous assignments of error, but the main question we shall consider is, whether the provisions of the act of 1885, upon which this prosecution is founded, was repealed by the act of 1891; for it is admitted by the attorney-general that if such is the case, the prosecution fails, as there is no saving clause in the latter act. It is not claimed that any of the provisions of the act of

1885 are expressly repealed by the act of 1891, but the contention is, that the two acts are in such direct and irreconcilable conflict that both cannot stand, and the latter operates as a repeal of the former by implication. A brief review of the legislation of this state in the matter of regulating the transportation of passengers and freight by railroad companies is necessary to a proper understanding of the question now before us. The first legislation upon the subject was the act of 1885, which in terms provides that no railroad company shall "charge or receive from any person who is to be conveyed over any railroad or railroads in this state any sum exceeding four cents per mile for the distance to be traveled by such person"; and for carrying freight, the rates a schedule of which showing the rates from all stations to all stations is required to be posted on the first Monday in July and January of each year, and not increased during the succeeding six months, "shall not exceed the rates charged (by the carrier) on the first day of January, 1885," and shall be alike to all persons for "like and contemporaneous service." By this act it is made unlawful for any railroad company engaged in the transportation of property directly or indirectly, to allow any rebate, drawback, or other advantage in any form upon shipments made or services rendered in carrying or handling domestic freight of similar grade, or to "enter into any combination or agreement * * * with intent to prevent the carriage from being continuous from the place of shipment to the place of destination, whether carried on one or several railroads in this state," or "to enter into any contract, agreement, or combination for pooling freight, or to pool freights of different and competing roads, or to divide between them the aggregate or net proceeds of the earnings of such railroads, or any portion of them," or "to charge or receive any greater compensation for a similar amount or kind of property for carrying, receiving, storing, forwarding, or handling the same for a

shorter than a longer distance in the same direction."
For a violation of any of the provisions of the act, the
officers and agents of the company are made liable to
indictment, and a civil remedy is given to the party dam-
aged, in which he may recover treble damages.

This act is in effect a maximum rate law. It was only
designed, as its title clearly implies, to regulate the trans-
portation of freight and passengers by railway companies,
and subject to its provisions, the power to fix freights and
fares remained with the carrier. The carrier was at liberty
to fix the charges for carrying both passengers and freight
over its line at any rate it might deem advisable; subject
only to the limitation that for passengers, the fare should
not exceed four cents per mile; and for freight, the rate
should not exceed that charged by the carrier on the first
day of January, 1885, and not increased oftener than once
every six months; and no discrimination should be made
in favor of or against persons or places, by rebate, draw-
back, combination, or pooling agreements or arrangements,
or by charging more for a shorter than a longer haul in the
same direction. Thus matters stood until the session of
1887, when "An act creating and establishing a board of
railroad commissioners, and to define and regulate its
powers and duties, and to fix the compensation of its mem-
bers," was passed. (Laws, 1887, 30.) This law provided for
two commissioners to be appointed by the governor, who
should have only supervisory powers over railways, and
with no authority to in any manner regulate or fix freights
or fares, for carrying either freight or passengers. (*Rail-
road Com.* v. *Railroad Co.* 17 Or. 65.)

In 1889 (Laws, 1889, 2) the commission act was amended
by increasing the number of commissioners to three, and
providing that they should be chosen by the legislative
assembly biennially, but no attempt was made to invest
the commission with power or authority to fix freights or
fares. The power to fix freights and fares still rem

with the carrier, subject to the provisions of the act of 1885, and with no authority in the commission to even determine whether the rates so fixed were reasonable or unreasonable. (*R. R. Comrs.* v. *R. R. Co. supra.*) In this condition of the law, the act of February, 1891 (Laws, 1891, 123), was passed. By this act it is provided that within ninety days after it becomes a law, it shall be the duty of every railroad company to furnish the board of railroad commissioners with a schedule of charges for the transportation of persons and property; and it is made the duty of the commission, and it is empowered "to revise such schedule so furnished, and determine whether or not, and in what respect, if any, such charges are more than a reasonable and just compensation for the services to be rendered, and whether or not unjust discrimination is made in such tariff of charges against any person, locality, or corporation"; and when the schedule is corrected and approved by the commission, it shall append a certificate of approval thereto. In case any railroad company shall fail to furnish the schedule of charges as required, the commission is authorized and empowered to fix a tariff of charges for such railroad, notwithstanding such failure; but in revising or establishing any tariff, the commission is required to take into consideration "the character and nature of the service to be performed, and the entire business of such railroad, together with its entire earnings from passenger and other traffic, and to so revise such tariffs as to allow a fair and just return on the value of such railroad, its appurtenances, and equipments," and to "continue such tariff of charges from time to time as justice to the public and each of said railroads may require, and to increase or reduce said rates according as experience or business operations may show to be just." In case a carrier refuses to comply with the tariff of charges as approved and fixed by the commission, the commission is authorized and empowered to commence a suit in the proper county, for the

purpose of requiring such carrier to comply with such tariff, leaving to the courts the question of the reasonableness of the rates prescribed by the commission. The commission is also authorized to hear and determine the complaint of any person aggrieved by any act of the carrier, and the findings of the commission thereon are made *prima facie* evidence in all subsequent judicial proceedings involving the same question. And if any carrier refuses or neglects to comply with the findings of the commission, it is made its duty to commence proper proceedings in the name of the state to enforce such findings. It is also provided that if any carrier subject to the provisions of the act, "shall charge, demand, or receive any greater amount for the transportaion of persons or property than the rates approved and fixed by the commission, and which rates may thereafter be adjudged to be reasonable by the proper circuit court, in the manner provided by section 2, * * * and such excess of charges is not repaid to the party injured by such overcharge within thirty days after written demand therefor, any person, firm, or corporation, who has paid such overcharges, may recover from such railroad company, * * * in an action in the circuit court of the county where such sum was paid, double the amount of all sums so paid over and above the rates approved and fixed as aforesaid, together with the costs and disbursements of such action, and such further sum as the court shall adjudge a reasonable sum as compensation for attorney fee in bringing and maintaining such action."

It may be stated as a general rule that repeals by implication are not favored; and a subsequent affirmative statute does not repeal a prior one unless there is a conflict between the two which is direct and irreconcilable. But where such conflict does exist, and the two statutes cannot be reconciled under the rules of statutory construction, the subsequent statute, being the later expression of the legislature on the subject, must be considered in force, and to operate as a

repeal by implication of all prior acts or parts of acts in conflict therewith. (*Grant Co.* v. *Sels*, 5 Or. 243; *Hurst* v. *Hawn*, id. 275; *Fleischner* v. *Chadwick*, id. 152; *Little* v. *Cogswell*, 20 Or. 345; *U. S.* v. *Tynen*, 11 Wall. 88.) That there is a direct and irreconcilable conflict between the provisions of the Hoult law, under consideration, and the act of 1891, seems obvious. The two acts cover the same ground, and are antagonistic in theory, and opposed in practice. By the one, the carrier is permitted to fix the rates for the transportation of persons and property, subject only to the limitations of the act; while by the other, this authority is taken from it and vested in the commission without limitation, except that the tariff as fixed by it shall be just between the carrier and the public, and shall be such as to "allow a fair and just return on the value of such railroad, its appurtenances and equipments." By the former act, the tariff, when fixed and posted, cannot be increased during the succeeding six months; while by the latter, the commission is authorized to change the rates from time to time, "as justice to the public and the railroad companies may require, either increasing or reducing them, as experience or business interests may show to be just." Under the Hoult law, in no case was the carrier permitted to charge or receive more than four cents a mile for carrying passengers, or rates in excess of those charged by it on the first day of January, 1885, for carrying freight, although as a matter of fact its business might be conducted at an absolute loss; while by the act of 1891, the commission is required to so fix the tariff, considering the character and nature of the services to be performed and the entire earnings of the road, as to "allow a fair and just return on the value of the road, its appurtenances and equipments," which necessarily requires it to exceed the maximum limits of the Hoult law if necessary to allow such just and fair return. By the former, the legislature declared without qualification that a greater charge for a shorter haul than a longer one in the same

direction is unjust discrimination against places; while the latter act, recognizing the fact that a less charge for a long haul than for a short one, if not made for the sake of putting up one place or another down, but when required by the exigencies of the business, in order to meet competition by water, the carriers on which are not under legislative control, is not necessarily an unjust discrimination, but the result of circumstances over which the carrier has no control, has therefore vested in the commission power and authority to determine whether or not a given tariff schedule constitutes unjust discrimination against or in favor of any locality.

If the act of 1891 simply authorized and empowered the commission to revise and establish freight rates and fares without any affirmative declaration as to what elements and results it should consider in so doing, it might be said that it would be controlled by the maximum limit of the Hoult law, and the two acts not be in conflict. But when the legislature declared in affirmative terms that the commission, in revising or establishing rates, "should take into consideration the character and nature of the services to be performed, and the entire business of such railroad, together with its entire earnings from passenger and other traffic, and so revise such tariff as to allow a fair and just return on the value of such railroad, its appurtenances and equipments," it clearly made it the duty of the commission, in fixing rates, to disregard the limitations of the Hoult law, if necessary in order to allow such "just and fair return."

The only limitation upon the commission in revising or establishing rates, is that such rates shall be a reasonable and just compensation for the services rendered, and be just as between the public and the carrier In this respect it is evident the conflict between the two acts is irreconcilable, and both cannot stand. The one fixes the maximum limit at a certain figure, whether such rates afford reasonable and just compensation for the services rendered

or not; the other fixes the minimum at such rates as will allow a fair and just return to the carrier. If, as is evident, the minimum rate to be fixed or established by the commission under the act of 1891 may, under a possible state of circumstances, exceed the maximum rate of the Hoult law, necessarily the two acts are in conflict, and the latter must prevail. (Suth. Stat. Const. § 145.)

And again, under the Hoult law, the defendant, as assistant general freight agent, had the right to make such rates for the transportation of freight and passengers as he pleased, subject only to the limitations of the act. If he charged or received a greater rate or compensation for a similar amount or kind of property for carrying the same for a shorter than a longer haul in the same direction, he became liable to indictment and punishment for a violation of section 4 of that law, because the rates were under his supervision and control, and such charge was his voluntary act; but as the law now stands, his power to make rates has been entirely withdrawn and vested in the agents and officers of the state. He may, if he so desire, furnish the schedule; but whether he does or not, the making of the rates and their validity is with the commission and the courts; and when so made, and declared reasonable by the courts, the carrier has no option but to put them into effect, and is liable to a prescribed penalty for not doing so. Suppose the defendant should submit to the commission a tariff schedule, showing a greater rate for carrying a similar grade of freight from Millersburg to East Portland than from Albany to the same point of destination, as is claimed he charged in this case, and the commission, in the exercise of the power and authority given it by the act of 1891, should determine that, in view of the competition at Albany by water transportation, or some other sufficient reason, such rates did not constitute unjust discrimination, and should approve the schedule, and the carrier put it into effect, as by law it is compelled

to do, could it be claimed by the state that defendant is guilty of a violation of the long and short haul clause of the Hoult law in charging the rates prescribed by the commission, when he had no power or authority to make the rates as he did under the Hoult law? Most assuredly not, because the two acts in this respect are in direct conflict and antagonistic in their requirements; and defendant is bound to obey the latter, and not the former act. The state has, by the act of 1891, adopted an entire change of policy in the matter of regulating freights and fares on railroads. Formerly, the legislature in its wisdom was content to leave the right to fix rates with the carrier, subject to certain limitations. In 1891, this policy was completely abandoned; and in its stead the legislature adopted that of a commission with power to fix rates, subject only to the judgment or decree of the courts as to their reasonableness in any given case. We conclude, therefore, that the provisions of the act of 1885, under which defendant was indicted, have been repealed by the act of 1891, and the prosecution must fail.

In order to avoid any misconception of the effect of this decision, it is proper to say that in this case we only hold that so much of the act of 1885 as left to the carrier the right to fix freights and fares subject to certain limitations, and the declaration of that act, that charging more for a shorter than a longer haul is unjust discrimination against places, is repealed by the act of 1891. The provisions of the act of 1885, making unlawful rebate. drawback, combinations, and pooling arrangements or agreements, are not involved in this case; and it is unnecessary for us to consider the effect of subsequent legislation thereon.

It was suggested at the argument that the act of 1891 is void because the requirements of the constitution were not complied with in its enactment. From the journals of the legislature it appears that the act arose out of house bill No. 97, introduced by Mr. Miller of Josephine. It

regularly passed the house, and was sent to the senate, where it was amended in many material respects. These amendments with the original bill were returned to the house for its concurrence, where, upon motion of Mr. Miller, it was referred to the committee on railroads and transportation, with leave to report at any time. This committee, after consideration of the matter, reported the bill back with a recommendation that the house concur in the senate amendments, and the journal states that "on motion of Mr. Miller, the report was adopted and the house concurred in the senate amendments to house bill No. 97." The objection made is, that the record of the house does not show that the bill as amended was read section by section on its final passage, nor that the vote was taken by yeas and nays. The constitution of this state requires that every bill shall be read section by section on its final passage, and "the vote on the final passage of every bill or joint resolution shall be taken by yeas and nays" (article 4, section 19); but there is no provision that either of these facts shall be entered in the journal, except the vote shall be entered when demanded by two members (article 4, section 13), or upon the passage of a bill notwithstanding the objections of the executive (article 5, section 15). In *Currie* v. *S. P Co.* 21 Or. 566, we held that the court will take judicial knowledge of the journals of the legislature for the purpose of impeaching the validity of the enrolled act on file with the secretary of state, and when from such journals it affirmatively appears that the bill as filed in the secretary of state's office did not in fact pass the legislature, the courts will refuse to recognize it as a valid law; but every reasonable presumption is to be made in favor of the legislative proceedings; and when the constitution does not require certain proceedings to be entered in the journal, the absence of such a record will not invalidate a law. It will not be presumed, from the mere silence of the journal, that either house has exceeded its authority

or disregarded constitutional requirements in the passage of legislative acts. ( Cooley, Const. Lim. *135; *Taylor* v. *Wilson*, 17 Neb. 88; *Berry* v. *R. R. Co.* 41 Md. 446; *State* v· *Francis*, 26 Kans. 724; *State* v. *McConnell*, 3 Lea, 332; *Williams* v. *State*, 6 Lea, 549; *Miller* v. *State*, 3 Ohio St. 475; *Worthen* v. *Badgett*, 32 Ark. 496; *State* v. *Mead*, 71 Mo. 266; *Supervisors* v. *People*, 25 Ill 181.)

Conceding, therefore, that the provisions of the constitution, that every bill shall be read section by section on its final passage, and the vote taken by yeas and nays, require that every amendment to a bill shall be so read and the vote thus taken, which may be well doubted, ( *Miller* v. *State*, 3 Ohio St. 475,) we must assume, in the absence of an affirmative showing to the contrary, that the constitutional requirements were observed, and hold that the act under consideration was constitutionally passed.

Nor is there any merit in the objection that the act of 1891 purports to ·be an amendment of existing laws upon the subject, without setting out the sections as amended, as required by section 22, article 4, of the constitution. This act was not designed as an amendment of any existing law, but to increase the powers and further define the duties of the railroad commission, and as supplementary to the then existing legislation on the subject, and therefore does not come within the provisions of the constitution above cited. *David* v. *Portland Water Co.* 14 Or. 98; Suth. Stat. Const. 135.)

The judgment of the court below is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.