Argued May 17, reversed orally May 22, written opinion June 12, 1917.

## STATE OF OREGON EX REL. v. BOYER, COUNTY CLERK.

(165 Pac. 587.)

**Statutes—Passage—Signatures of Officers of Houses—Constitution.**

1.  Under Article IV, Section 25, of the Constitution, providing that a majority of all the members elected to each House shall be necessary to pass every bill or joint resolution, and that all bills or joint resolutions so passed shall be signed by the presiding officers of the respective Houses, every bill presented to the officers for their signatures shall in its entirety as presented have received the vote of a majority of the members of each House.

**Statutes—Referendum by Legislature—Constitution.**

2.  By Article IV, Section 1, of the Constitution, the legislature can of itself refer to the people any and all laws enacted by it, provided that the act shall be first passed as other bills are enacted; less than a majority of the whole membership of the legislature having no authority to refer a bill.

84 Or.—33

Constitutional Law—Statutes—Presumption.

3. Where the journals of the legislature are silent on the subject, the supreme court will presume that the legislature observed the constitutional requirement that an amendment by one branch of the legislature was concurred in by constitutional majority of the other branch.

> [As to presumption that an ordinance is valid, see note in **Ann. Cas.** 1916B, 502.]

Statutes—Passage as Amended—Constitution.

4. Under Article IV, Section 25, of the Constitution, providing that a majority of all members elected to each House shall be necessary to pass every bill or joint resolution, and that all bills or resolutions so passed shall be signed by the presiding officers of the respective Houses, where a bill consisting of four sections passed the House, and was sent to the Senate, and there amended by adding Section 5, providing that the act should be submitted to the people at the next general election, etc., and, as thus amended, was passed by the Senate and sent back to the House, and on the question, "Shall the House concur?" the yeas and nays were demanded, when twenty-eight voted yea, twenty-six voted nay, six were absent, and one was excused, the names of those voting and those absent or excused being entered in the journal, and the bill being signed by the Speaker of the House and the President of the Senate, the bill never passed the legislature, not having been approved in its amended shape (Laws 1917, p. 457), by a majority of the House.

From Marion: GEORGE G. BINGHAM, Judge.

The State of Oregon ex rel. Max Gehlhar, as district attorney of the State of Oregon for Marion County, brought this suit against U. G. Boyer, county clerk of the county of Marion, enjoining him as such official from placing a certain measure upon the ballot for the special election to be held on June 4, 1917. A demurrer being sustained and defendant refusing to further plead, an order was entered dismissing the suit and plaintiff appealed. Reversed and decree entered as prayed for in the complaint.

In Banc.    Statement by MR. CHIEF JUSTICE McBRIDE.

This was a suit brought in the Circuit Court to enjoin defendant from placing upon the ballot for the special election held June 4, 1917, a measure, the object and tenor of which were to require the assessors of the various counties of the state to assess certain lands

claimed by the Southern Pacific Railroad Company, the title to which has been in controversy between that company and the United States. The facts are as follows: The records of the legislative assembly show that a bill consisting of four sections passed the House on February 14, 1917, and was sent to the Senate and there amended by adding another section (numbered 5), which is as follows:

"This act shall be submitted to the people of the state of Oregon at the next general election or any special election called before such general election, and when ratified at such election shall be in full force and effect."

The bill as thus amended was passed by the Senate and sent to the House, and upon the question being put "shall the House concur" the yeas and nays were demanded. Upon the roll-call twenty-eight members voted yea, twenty-six voted nay, six were absent, and one was excused; the names of those voting as well as those absent or excused being entered in the journal. The bill was signed by the speaker of the House and President of the Senate and approved by the Governor.

The relator claims that by virtue of the provisions of Article IV, Section 25, of the Constitution the bill never became a law by reason of the fact that if did not receive a majority of the votes of the members elected to the House of Representatives. Said section is as follows:

"A majority of all the members elected to each house shall be necessary to pass every bill or joint resolution; and all bills or joint resolutions so passed shall be signed by the presiding officers of the respective houses."

The complaint recited the facts above set forth, and further alleged that the ballot title of the bill had been

duly certified to the defendant, who was about to place it upon the ballot to be voted upon at the ensuing special election, and prayed that he be enjoined from so doing.

There was a general demurrer to the complaint, which being sustained, and the plaintiff electing to stand thereon, was followed by an order dismissing the suit, from which order plaintiff appeals.

                    REVERSED.  DECREE RENDERED.

For appellant there was a brief over the names of *Mr. Martin L. Pipes* and *Mr. Max Gehlhar,* with an oral argument by *Mr. Pipes.*

For respondent there was a brief with oral arguments by *Mr. Frank S. Grant* and *Mr. Louis E. Bean.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

Much of the argument here is based upon the proposition that the courts will not interfere to enjoin the passage of a bill on the ground that the measure is unconstitutional, and upon that point counsel cite: 14 R. C. L. 433; *Lewis* v. *Denver City Waterworks Co.,* 19 Colo. 236 (34 Pac. 993, 41 Am. St. Rep. 248); *Kadderly* v. *Portland,* 44 Or. 118 (74 Pac. 710, 75 Pac. 222); *Murphy* v. *East Portland,* 42 Fed. 308; *Chicago etc. R. Co.* v. *City of Lincoln,* 85 Neb. 733 (124 N. W. 142, 19 Ann. Cas. 207); *State* v. *Thorson,* 9 S. D. 149 (68 N. W. 202, 33 L. R. A. 582); *Pfeifer* v. *Graves,* 88 Ohio St. 473 (104 N. E. 529). In our judgment the matter so discussed is not involved in this case. The question is not whether the measure submitted would be constitutional if passed, but whether the measure has in fact passed the legislature. The provisions of the

Constitution bearing directly upon the matter at issue are:

(1) Section 25, Article IV, above quoted;

(2) Section 19, Article IV:

"Every bill shall be read by sections, on three several days, in each house, unless in case of emergency two-thirds of the house where such bill may be depending, shall, by a vote of yeas and nays, deem it expedient to dispense with this rule; but the reading of a bill by sections on its final passage shall in no case be dispensed with, and the vote on the passage of every bill or joint resolution shall be taken by yeas and nays";

and (3) the following excerpt from Section 1, Article IV, as amended June 2, 1902:

"The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety, either by the petition signed by five per cent of the legal voters, or by the legislative assembly, as other bills are enacted."

1. On principle it would seem plain that the intent of the framers of the Constitution was that no bill should become a law without the assent of a majority of all the members elected to the legislature. Laying aside the technical and extremely refined definitions of some of the courts of the words "final passage," used in Section 19 of Article IV, *supra,* wherein it has been held that such words mean something less than the last legislative vote upon the bill in its completed form, Section 25 of Article IV is complete in itself. It provides, first, that

"a majority of all the members elected to each house shall be necessary to *pass* every bill or joint resolution"; and, second, that "all bills and joint resolutions

*so passed* shall be signed by the presiding officers of the respective houses.''

Analyzing this section we inquire, ''What bills are the officers of each House required to sign?'' The answer must be, ''Bills passed by a majority of the members of each House.'' The plain intent of the section quoted is that every bill presented to the officers for their signatures shall in its entirety as presented have received the vote of a majority of the members of each House; and to say that it means anything less or different from this would be a perversion of language and logic.

2. It is suggested that the legislature can of itself refer any or all laws enacted by it to the people, and this is true: Article IV, Section 1 of the Constitution; *Libby* v. *Olcott,* 66 Or. 124 (134 Pac. 13); *Thielke* v. *Albee,* 76 Or. 449 (150 Pac. 854). But the right of the legislature to submit a measure to the vote of the people is conditioned that the act referred shall be first passed ''as other bills are enacted'' (Article IV, Section 1, of the Constitution); the evident intent of the section being that less than a majority of the whole membership of the legislature should have no authority to refer a bill to the electorate.

The line of reasoning here adopted would seem to render unnecessary a consideration of what constitutes the ''final passage'' of a bill within the meaning of Article IV, Section 19, of the Constitution. Counsel for defendant cites authorities tending in a greater or less degree to hold that the words ''final passage'' have a technical signification differing from their lexicographical meaning, and that as used in our Constitution the final passage of a bill is the vote by which each House adopts a bill after it has passed the first and second readings, been read the third time, and put

on its final passage; and that after a bill has been so passed in one House and amended and passed in the other it is not necessary that a concurrence in the amendment shall be by a constitutional majority.

The first case cited by counsel is *Johnson* v. *City of Great Falls,* 38 Mont. 369 (99 Pac. 1059, 16 Ann. Cas. 974), which latter publication embraces in the note to the principal case a full citation of the authorities bearing upon the subject. The principal case does not consider the effect of a lack of a constitutional majority as affecting the validity of an amended bill, but holds that under a provision of the Montana Constitution similar to Article IV, Section 19 of our Constitution it is not necessary that the yeas and nays be taken upon such amendment. The question as to whether a failure of a constitutional majority of the members to concur in an amendment would render it invalid was not involved or considered. The principal reason given by the Montana court is that to require a calling of the yeas and nays upon concurrence would logically require in addition that the bill as amended should be read three times, and go through all the preliminaries of an original bill, and thereby delay and embarrass legislation. The first conclusion would seem to be a *non sequitur,* and as to the second it may be observed that less haste in the enactment of bills would not be an unmixed evil—perhaps a positive benefit. The other cases cited are to the same effect, and we find no case in which it appears affirmatively from the journal that the concurrence was by less than a majority of the whole membership of the concurring body. As against the views thus enunciated we find a body of decisions, fewer, perhaps, in number, but certainly logical in reasoning, which hold that the failure of a majority of the membership of the con-

curring body to vote in favor of the amendment renders the bill void. *Norman* v. *Kentucky Board of Managers, etc.,* 93 Ky. 537 (20 S. W. 901, 18 L. R. A. 557), is a case very similar to the one at bar. The following is a statement by the court of the facts and the substance of its opinion thereon:

"The act originated in the Senate, and passed that body, upon a yea and nay vote, entered upon its journal, by the required majority. It then went to the other House, where, after being amended, it passed, upon a like vote, entered upon its journal, by a like majority. It then came back to the Senate, where the amendments were concurred in without a yea and nay vote, and without the vote of a majority of the members elected. It is conceded by the counsel for the appellees, and seems plain, that this mode of proceeding did not conform to the Constitution. It complied with it in neither letter nor spirit. The object of the section above cited was to have the assent of a majority of all the members elected to each House to all the provisions of the act, and that this should appear by a yea and nay vote entered upon its journal. If a bill, after passing one House in the proper manner, and then, after amendment, passing the other House in like manner, could come back to the House in which it originated, and be adopted by a majority of those voting, or a quorum, it would defeat this object, and render the section ineffectual. Let us look at it practically. An appropriation bill of $100 originates in the Senate, and is properly passed. It goes to the House, where it is amended by making the sum $10,000, and is then properly passed by it. It returns to the Senate for concurrence, and is adopted, as amended, by a majority of those present, without a yea and nay vote. Can it be well contended that this would be a compliance with the Constitution? If so, then there being thirty-eight senators, it would require twenty, or a majority of them to pass a bill for a trifle; but, after being amended in the House so as to perhaps bankrupt the treasury,

it could be concurred in by the Senate by the votes of eleven members, or a majority of a quorum; and in case of the House, with its 100 members, it would require fifty-one to pass the bill, if it originated there, but only twenty-six, or a majority of a quorum, to concur in it after it had been changed in like manner by the Senate. Further illustration seems needless. It is true it has been held that the 'final passage' of a bill means when it first passes the body, and not when it returns to it, after amendment, for adoption; and it is said that the constitutional provision as to the number of votes, and the entry of the yea and nay vote on the journal, does not apply to amendments, or the reports of conference committees. If so, then no matter how material the change, a majority vote of a quorum may pass the bill. The words 'final passage,' as used in our Constitution, mean final passage. They do not mean some passage before the final one, but the last one. They do not mean the passage of a part of a bill, or what is first introduced, and which may, by reason of amendment, become the least important. If so, then the body may pass what is practically a new bill in a manner counter to both the letter and spirit of the Constitution. When the bill was voted on in the Senate, as amended, and after its return from the House, there never was any further action by the Senate. It was the final vote, and, therefore, its final passage; and, being so, a majority vote of all the members elected, with an entry by yea and nay vote upon the journal, was necessary to its constitutional enactment. The bill, as approved by the speakers of the two Houses and by the Governor, never was passed by the Senate, by a majority of all its members, nor by a yea and nay vote.''

It is difficult to escape the logic of this opinion. To like effect see *Cohn* v. *Kingsley,* 5 Idaho, 416 (49 Pac. 985, 38 L. R. A. 74); *Stephens* v. *Labette Co.,* 79 Kan. 153 (98 Pac. 790, and note to 16 Ann. Cas. 974). But our view of the effect of Article IV, Sections 1

and 25, renders a discussion of the above question largely academic, and we do not feel that it is necessary to pass upon it in this case.

It is urged that it has been the frequent practice of the legislature ever since the adoption of the Constitution to concur in amendments without the yeas and nays being called and by less than a majority vote of the whole membership. The most that can be said is that the journals are silent as to these particulars. It may be conceded for the purposes of this case, illogical as the concession may seem, that the taking of an aye and nay vote upon an amendment is unnecessary, and that the final passage of a bill in the meaning of the Constitution is the vote by which it passed before it is amended by the other branch of the legislative body; but there still remains Section 25 requiring, in effect, a majority of all the members elected to pass a bill, which in that section evidently means a complete bill ready for the signatures of the respective officers. We do not after a diligent search of the journals find a single instance outside of the present where it is shown that an amendment by one branch of the legislature was concurred in by less than a constitutional majority of the other.

3, 4. We find a multitude of instances where the record is silent on the subject, and in such cases the courts will presume that the constitutional requirement was observed: *State* v. *Rogers,* 22 Or. 348 (30 Pac. 74) ; *McKinnon* v. *Cotner,* 30 Or. 588 (49 Pac. 956) ; *Portland* v. *Yick,* 44 Or. 439 (75 Pac. 706, 102 Am. St. Rep. 633). Here the record is not silent. It shows upon its face that only twenty-eight members of the sixty elected voted in favor of the measure. Until some system of logic can be invented which will demonstrate that to pass a bill it is necessary only to pass a part of one, and

that twenty-eight and thirty-one are synonymous, we cannot hold that this measure ever passed the legislature. Counsel for plaintiff has refrained from a discussion of the constitutionality of the act, and we do not place our decision upon that ground. We merely hold that it never passed the legislature, and was, therefore, ineligible to a place on the ballot. The Constitution provides two methods by which measures may be referred to the people for their decision. One is by petition signed by 5 per cent of the legal voters, and the other is by an act passed by the constitutional vote of the legislature. In *State ex rel.* v. *Olcott,* 62 Or. 277 (125 Pac. 303), we held that the courts had jurisdiction to ascertain whether a referendum petition contained a sufficient percentage of names of legal voters to entitle the measure to be put upon the ballot; and following the same line of reasoning we have the right to ascertain whether such constitutional prerequisites have been complied with as will entitle the measure here involved to be voted upon at the June election. They have not. The act never passed the legislature, and a decree will be entered here reversing the decree of the Circuit Court and enjoining the defendant from placing the proposed measure upon the ballot.

REVERSED AND DECREE RENDERED.

MR. JUSTICE BENSON absent.