Decided at PENDLETON July 31, 1897.

## McKINNON v. COTNER.

(49 Pac. 956.)

ENACTMENT OF STATUTES—LEGISLATIVE JOURNALS—PRESUMPTION.— An enrolled act, signed by the proper officers, and filed in the office of the secretary of state, will be held to have been enacted as enrolled, though the legislative journals show that in its progress through the legislature an amendment was adopted which is not included in the enrolled act, as it will be presumed that the vote by which such amendment was adopted was reconsidered, and the amendment defeated. The rule adopted in this State is that when it appears from the legislative journals that the enrolled act on file with the secretary of state did not receive in either house the number of votes requisite for its passage, the act will be held invalid. This fact, however, must affirmatively be shown; mere silence of the records is not enough: *Currie* v. *Southern Pacific Co.*, 21 Or. 566, and *State* v. *Rogers*, 22 Or. 348, cited and applied.

From Union: ROBERT EAKIN, Judge.

Proceeding on execution by J. D. McKinnon against H. C. Cotner and another, defendants, and the American Fire Insurance Company of Philadelphia, garnishee. A demurrer to the answer of the garnishee was sustained, and it appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Willard W. Hindman.*

For respondent there was a brief and an oral argument by *Messrs. John W. Knowles* and *James D. Slater.*

Opinion by MR. JUSTICE BEAN.

On March 17, 1894, the plaintiff recovered a judgment against the defendant Cotner for the sum of $93.70, and

under an execution issued thereon the sheriff levied by garnishment upon a sum of money alleged to be due from the American Fire Insurance Company to Frances Cotner under a fire insurance policy covering a dwelling house belonging to her which had been destroyed by fire. The answer of the insurance company to the notice of garnishment being unsatisfactory, the plaintiff procured an order requiring it to appear before the court for examination touching its liability, and thereupon served written allegations and interrogatories, to which the company answered, setting up as a defense (1) that by the terms of the policy no action could be maintained thereon until the assured had made due proof of loss in accordance therewith, and that this provision had neither been complied with nor waived at the time of the service of the garnishee process upon it; and (2) that in any event the amount due or to become due from it to Frances Cotner under the policy in question could not be levied upon under execution, because the property covered thereby was her homestead, and exempt from judicial sale by virtue of the act of the legislature of this State approved February 21, 1893: Laws 1893, p. 93. To this answer a demurrer was submitted and sustained, and, the garnishee refusing to plead further, judgment was rendered against it, from which this appeal is taken.

It will be observed that two questions are presented by this record for decision: First, whether, under an insurance policy conditioned that the company shall not be liable thereon until due proof of loss is made, the company can be charged as garnishee in an action against the policy holder before the required proof has been made or the loss adjusted; and, second, whether what purports to be an act of the legislature of 1893 to exempt homesteads from attachment and judicial sale is a valid law of the State. The consideration of the last question nat-

urally takes precedence over the other, because it is conceded that if the act referred to is a valid law, this proceeding cannot be maintaind, and the judgment must be reversed. The contention of the plaintiff is that the enrolled act in the custody of the secretary of state, although appearing upon its face to have been regularly passed by the legislature and approved by the governor, is a nullity, because an amendment to the original act providing that it should not go into effect until January 1, 1894, which appears to have been adopted by the legislature, is not in such enrolled act. The journals of the legislature show that the act in question (designated as House Bill No. 46) was introduced in the house, regularly passed by that body (House Journal, p. 238), and duly transmitted to the senate, where, upon its third reading, on February 16, it was by unanimous consent amended by adding section 8, which provides that the act shall take effect and be in force from and after the 1st day of January, 1894, and, as so amended, was duly passed: Senate Journal, p. 782. The original bill, with the amendment, was then returned to the house, and on the same day the amendment was concurred in by that body, and the bill ordered enrolled: House Journal, p. 928. No further reference to the bill is to be found in the journals of either house, except the entries therein showing that on February 17, 1893, it was duly signed by the presiding officers thereof (House Journal, p. 946; Senate Journal, p. 801), and the enrolled act so signed was approved by the governor, filed in the office of the secretary of state, and published among the laws of the session of 1893, but does not contain section 8. The question here presented is whether this enrolled act, thus authenticated, shall be deemed a nullity because it does not contain the amendment referred to; and thi involves the inquiry as to what extent the validity of a enrolled act in the custody of the secretary of state, an(

appearing upon its face to have become a law in the manner provided by the constitution, may be impeached by the journals of the legislature. Upon this point there is great conflict in the authorities. One view is that the legislative journals must affirmatively show conformity to the requirements of the constitution in the passage of the bill through its several stages, or else it is not a law. Another view is that the enrolled act, signed by the proper officers and filed in the office of the secretary of state, is to be deemed regularly enacted, and cannot be impeached by reference to the legislative journals. And a third view is that the mere silence of the journals as to matters not required by the constitution to be entered therein will not invalidate a law, but it will be presumed in such case that the enrolled act as filed in the office of the secretary of state, if signed by the presiding officers of the two houses, was regularly passed, but if the journals affirmatively show that in fact it did not pass, the courts will refuse to recognize it as a valid law.

The authorities bearing upon this question will be found collated and arranged by states in a footnote to *Field* v. *Clark*, 143 U. S. 661 (12 Sup. Ct. 495). The question was before this court in *Currie* v. *Southern Pacific Co.*, 21 Or. 566 (28 Pac. 884); and *State* v. *Rogers*, 22 Or. 348 (30 Pac. 74); and the rule there applied is that when it appears from the journals of the legislature that the enrolled act filed in the office of the secretary of state did not in fact receive the requisite number of votes in either house for its passage, the courts will refuse to regard it as a valid law, but the absence of an affirmative showing in the journal to that effect does not affect its validity. In other words, in order to impeach the validity of such an act it must affirmatively appear from the legislative journals that it did not in fact receive the approval of the constitutional number of the members of the legislature.

Mere silence of the journal is not sufficient. Within this rule, we think the act in question must be regarded as valid. It nowhere appears in the journal that it did not pass in the form as actually signed by the presiding officers, and now on file in the office of the secretary of state. It is true, the journals show that in its progress through the legislature an amendment was adopted which is not included in the enrolled act, but the vote by which such amendment was adopted may have been reconsidered, and the amendment defeated. At least, the courts are bound to presume such to have been the case. The enrolled act as filed with the secretary of state is signed by the officers of the house and senate required by the constitution to sign all bills and joint resolutions passed by their respective bodies, and is therefore officially attested in the manner required by the organic law as one that has regularly and duly passed the legislature, and this attestation must prevail, unless the contrary conclusively appears by the journals of their proceedings: *State* v. *Francis,* 26 Kan. 724. The constitution requires all bills and joint resolutions to be signed by the presiding officers of the respective houses (section 25, article IV), and their signatures must be given full force and effect, and import absolute verity, unless affirmatively contradicted by the journals which the constitution requires to be kept. It follows that in our opinion the homestead law is not invalid for the reason urged in this case, and the judgment of the court below must be reversed, and the cause remanded with directions to overrule the demurrer to the answer of the garnishee.

REVERSED.