Argued June 6; reversed June 15, 1945

# OREGON BUSINESS & TAX RESEARCH, Inc., v. FARRELL

(159 P. (2d) 822)

Before BELT, Chief Justice, and ROSSMAN, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*Wilber Henderson,* of Portland (Platt, Henderson, Warner, Cram & Dickinson, of Portland, on the brief), for appellant.

*Rex Kimmell,* Assistant Attorney General (George Neuner, Attorney General, on the brief), for respondent.

BAILEY, J. This suit was instituted by Oregon Business & Tax Research, Inc., an Oregon corporation, against Robert S. Farrell Jr., as secretary of state of Oregon, to have declared invalid chapter 460, Oregon Laws 1945, relating to the preparation of local budgets, and to enjoin the secretary of state from publishing or causing to be published that chapter as a part of the general session laws for the year 1945. From a decree dismissing the suit plaintiff appealed.

Plaintiff contends that the act before us, known as house bill No. 403 throughout its legislative history, was never passed by the legislature. In support of this contention plaintiff asserts that although the house journal affirmatively shows that the house had refused to concur in the senate amendments to house bill No. 403, nevertheless the enrolled bill filed in the office of the secretary of state erroneously contains such senate amendments and fails to include the amendments of the conference committee which had been adopted and incorporated in the bill as repassed by both houses.

Chapter 460 purports to amend §§ 110-1202, 110-1204, and 110-1206, O. C. L. A., and § 110-1207, O. C. L. A., as amended by chapter 393, Oregon Laws 1943. Section 3 of house bill No. 403, as introduced, amends 110-1206, O. C. L. A., by providing that in preparing

the budget there may be "subtracted" from the estimated "probable unappropriated or unexpended balance in money which shall remain in each fund, department or office on the last day of the current year, * * * a reserve of available cash which, in an amount not exceeding 25 per cent of the total estimated expenditures of the municipal corporation for the ensuing fiscal year, may be reserved in cash reserve accounts shown in the budget for the purpose of maintaining the municipal corporation on a cash operating basis."

The house journal shows that on March 1, 1945, house bill No. 403 was introduced and read for the first time; that on March 2nd, the bill was read the second time and referred to the committee on taxation and revenue; and that on the same day the committee reported the bill back to the house with the recommendation that it do pass with certain proposed amendments. One of these amendments, to which particular attention has been directed in this case and the only one to which we shall refer, was the change from 25 per cent to 10 per cent in the amount of available cash reserve permitted a municipal corporation. This report of the committee was adopted, and on March 5th the bill was read the third time and passed.

It appears from entries in the senate journal that the bill was read the first time in the senate on March 6th and that on the following day it was read the second time and referred to the committee on municipal affairs. On the 14th of March the committee recommended that the bill do pass with suggested amendments, one of which was a change from the 10 per cent in the bill as passed by the house to 15 per cent in the amount of available cash reserve permitted a munici-

pal corporation. The report of the committee was adopted and the bill was read the third time and passed in the senate on March 15th.

The house refused to concur in the senate amendments, and on the 16th of March two representatives and two senators were appointed as conferees. On March 17th the conference committee reported to the house and senate, recommending that the bill "do pass with the following further amendments", one of these amendments being the substitution of the 10 per cent, which the bill contained at the time it originally passed the house, for the 15 per cent contained in the senate's amendment to the bill. The house adopted the report of the conference committee and then repassed the bill on March 17th. The action of the house was transmitted to the senate which "thereupon adopted the conference committee report" and repassed the bill "as amended and recommended by the conference committee."

No further reference to house bill No. 403 is contained in the journal of either house. The legislature adjourned on March 17th, 1945. Enrolled house bill No. 403, now on file in the office of the secretary of state, which was signed by the speaker of the house and president of the senate and approved by the governor, does not contain the amendments proposed by the conference committee. On the other hand, it contains the senate amendments in which the house refused to concur.

■ The question here presented is whether the validity of an enrolled act in the custody of the secretary of state, authenticated by the signatures of the presiding officers of the respective houses and approved by the

governor, can be impeached by the journals of the legislature or by other evidence.

In *McKinnon v. Cotner,* 30 Or. 588, 49 P. 956, it is pointed out that there is a great conflict in the authorities on the matter under consideration. Some jurisdictions have adopted the rule that unless the legislative journals affirmatively show conformity to the requirements of the constitution in the passage of the bill through its several stages it is not a law. In other jurisdictions the rule is that an enrolled act, signed by the proper officers and filed in the office of the secretary of state, is deemed regularly enacted and cannot be impeached by reference to the legislative journals. In still other jurisdictions it is the rule "that the mere silence of the journals as to matters not required by the constitution to be entered therein will not invalidate a law, but it will be presumed in such case that the enrolled act as filed in the office of the secretary of state, if signed by the presiding officers of the two houses, was regularly passed, but if the journals affirmatively show that in fact it did not pass, the courts will refuse to recognize it as a valid law."

The second rule, above-mentioned, has been referred to frequently as the enrolled bill rule, and the last one, above-mentioned, as the journal entry rule. *Boyd v. Olcott,* 102 Or. 327, 202 P. 431. This court has approved and followed the journal entry rule. *Ibid.* p. 349.

That rule was enunciated for the first time by this court in *Currie v. Southern Pacific Co.,* 21 Or. 566, 28 P. 884. The act there involved was signed by the officers of the respective houses, approved by the governor, and filed with the secretary of state. It was known as house bill No. 5. That bill passed the house

by the requisite majority and went to the senate "where it passed through all the requisite forms until it was put upon its final passage, when it received 13 ayes and 11 nays. There were five absent and one senator was excused. 'So the bill failed to pass.' (Senate Journal, 527)." After citing the foregoing facts, the court said: "It thus appears from the vote recorded in the journal by the recital therein that house bill No. 5 did not receive the requisite vote upon its final passage, and therefore never became law." In laying down the rule, which has since been followed in this state, the court observed:

" * * * Without undertaking to reconcile the conflict between the various adjudged cases, it may be stated generally that where a bill has been regularly enrolled, signed by the presiding officers of the two houses, approved by the governor, and filed with the secretary of state, and [sic] the mere silence of the legislative journals or their failure to show affirmatively that some requirement of the constitution was not complied with in its enactment, would not be sufficient to overthrow such enactment. But when the journals show upon their face that said bill did not receive the requisite vote upon its final passage, and for that reason did not pass, it is difficult to see how the official signatures could give it the force and effect of law."

The correctness of the holding in the Currie case does not seem to have been questioned by this court in later decisions. The principle there announced was approved in *State v. Rogers,* 22 Or. 348, 30 P. 74. There it was contended that the house journal failed to show that the bill as amended by the senate was read section by section on its final passage in the house and also failed to show that the vote was taken by yeas and nays. It was stated by the court that the constitu-

tion did not require these facts to be shown in the journal and therefore "we must assume, in the absence of an affirmative showing to the contrary, that the constitutional requirements were observed, and hold that the act under consideration was constitutionally passed."

The constitution of the state of Oregon requires that each "house shall keep a journal of its proceedings." Art. IV, § 13. But it does not provide what proceedings of the legislature shall be recorded therein except that the vote shall be entered when demanded by two members. *Ibid.* And when a bill is vetoed by the governor, the house in which the bill originated "shall enter the objections at large upon the journal" and if the bill is repassed notwithstanding the veto of the governor "the names of the members voting for or against the bill shall be entered on the journal of each house respectively". Art V, § 15b; *State v. Rogers,* supra.

It is further provided by the constitution that a "majority of all the members elected to each house shall be necessary to pass every bill" and that all bills "so passed shall be signed by the presiding officers of the respective houses." Art. IV, § 25. The house consists of 60 members and the senate, 30 members, and an affirmative vote of 31 members of the house and 16 members of the senate is necessary to pass any bill.

In *State of Oregon, ex rel. v. Boyer,* 84 Or. 513, 165 P. 587, the court, after quoting § 25, article IV, proceeded as follows: "Analyzing this section we inquire, 'What bills are the officers of each House required to sign?' The answer must be, 'Bills passed by a majority of the members of each House.' The plain intent of the section quoted is that every bill

presented to the officers for their signatures shall in its entirety as presented have received the vote of a majority of the members of each House; and to say that it means anything less or different from this would be a perversion of language and logic.''

In that case the court was considering whether a certain bill had been passed by both houses. It originated in the house and when it reached the senate it was there amended and passed. It was thereupon returned to the house ''and upon the question being put 'shall the House concur' the yeas and nays were demanded. Upon the roll-call twenty-eight members voted yea, twenty-six voted nay, six were absent, and one was excused; the names of those voting as well as those absent or excused being entered in the journal. The bill was signed by the speaker of the House and President of the Senate and approved by the Governor.'' In holding that the bill there in question had not passed the legislature, the court used this language:

''We find a multitude of instances where the record is silent on the subject, and in such cases the courts will presume that the constitutional requirement was observed: State v. Rogers, 22 Or. 348 (30 Pac. 74); McKinnon v. Cotner, 30 Or. 588 (49 Pac. 956); Portland v. Yick, 44 Or. 439, (75 Pac. 706, 102 Am. St. Rep. 633). Here the record is not silent. It shows upon its face that only twenty-eight members of the sixty elected voted in favor of the measure. Until some system of logic can be invented which will demonstrate that to pass a bill it is necessary only to pass a part of one, and that twenty-eight and thirty-one are synonymous, we cannot hold that this measure ever passed the legislature. * * * ''

■ In the instant case the house journal is not silent as to the action taken by the house in reference to the

senate amendments to house bill No. 403. That journal and also the senate journal affirmatively show that the house refused to concur in these amendments. Moreover, the entries in the journals of both houses show that the usual procedure was followed when one house refuses to concur in the amendments made by the other. Conferees were appointed and the report of the conference committee was submitted to and adopted by both houses, and the bill, embodying the amendments contained in the committee's report, was repassed on the last day of the session by both houses. These amendments, as hereinbefore pointed out, were materially different from those originally adopted by the senate in which the house refused to concur. The enrolled bill does not contain any of the conference committee's amendments but does include all of the senate's amendments.

In our opinion, *Currie v. Southern Pacific Co.*, supra and *State of Oregon, ex rel. v. Boyer*, supra, are decisive of the question here presented. Under the rulings of these cases enrolled house bill No. 403 never became a law. The journals of both houses affirmatively show that the bill, as enrolled, never passed the house. We therefore hold that chapter 460, Oregon Laws 1945, was not legally passed or adopted by the legislature.

The conclusion which we have reached in this case is not in conflict with *Woodward v. Pearson*, 165 Or. 40, 103 P. (2d) 737, strongly relied on by the defendant. The complaint in that case alleged that both the house and senate adopted the amendments recommended by a conference committee but that the bill as passed by both the house and senate included some, but not all,

of those amendments. The enrolled bill did not differ from the bill as passed by both houses.

■ Plaintiff in its complaint asked that the secretary of state be enjoined from publishing or causing to be published chapter 460, Oregon Laws 1945, as a part of the general session laws for that year. No order restraining the secretary of state from proceeding with the printing of the session laws has been issued. We are not advised as to how far the printing of these laws has progressed; consequently, we do not think it is proper at this time to enjoin the secretary of state from printing chapter 460 as a part of the 1945 session laws. Copies of the 1945 session laws have not yet been distributed, and before doing so the secretary of state will undoubtedly show by proper notation that that chapter, if included therein, has been declared invalid.

The decree appealed from is reversed. Costs will not be allowed either party in this court.