Argued December 13; affirmed December 21, 1945

## YOUNG ET AL. *v.* GALLOWAY ET AL.

(164 P. (2d) 427)

Before BELT, Chief Justice, and ROSSMAN, LUSK, BRAND, KELLY, HAY, and BAILEY, Associate Justices.

*James G. Smith,* of Portland (with Maguire, Shields & Morrison, of Portland, on the brief), for appellants.

*Rex Kimmell,* Assistant Attorney General (with George Neuner, Attorney General, on the brief), for respondents.

BAILEY, J.   This suit was instituted by Frederic H. Young and Oregon Business & Tax Research, Inc., a corporation, against the individual members of the Oregon State Tax Commission, to have declared invalid chapter 411, Oregon Laws 1945, and to enjoin the defendants from complying with the provisions of that act.   From a decree dismissing the suit plaintiffs have appealed.

It is the plaintiffs' contention that chapter 411, *supra,* known as house bill No. 388 throughout its legislative history, was never passed, either by the house or senate.   They assert that the journals of the house and senate affirmatively show that house bill No. 388 passed both houses containing amendments not embraced in the enrolled bill which was signed by the president of the senate, the speaker of the house, and approved by the governor, and do not show that either the house or senate passed the bill in the form contained in the enrolled bill.

House bill No. 388 purported to add a new section to chapter 16, title 110, O. C. L. A., to be known as

§ 110-1605b, and to amend § § 110-1611 and 110-1613, O. C. L. A. The bill, as originally introduced, provided that in lieu of the tax imposed under the provisions of § 110-1605, O. C. L. A., an individual whose gross income is less than $5,000, and consists wholly of certain specified items, may elect to pay a tax in accordance with a tax table prepared by the tax commission, and that such tax table shall allow as a deduction the amount of the federal income tax as shown by the gross income bracket ''plus 7 per cent of the median gross income of the gross income bracket.'' It further provided that an individual whose gross income is $5,000 or more, might deduct the amount of the federal income tax paid plus $350.

The bill was introduced by the house committee on taxation and revenue on February 22, 1945. Upon its second reading the bill was referred to the committee on taxation and revenue, which reported the bill back with the recommendation that it do pass with certain amendments. The committee's report was adopted and on third reading the bill passed the house. No question is raised as to the foregoing procedure in the house.

After passing the house the bill in its engrossed form, containing the house amendments, was transmitted to the senate, and upon its second reading in the senate, the bill was referred to the senate committee on assessment and taxation. On March 12, this committee reported the bill back to the senate with the recommendation that it do pass as amended. These amendments consisted of a change in two places in the bill as to the amount which might be deducted, from 7 per cent to 6 per cent. The report of the committee was adopted by the senate. The next reference in the

journal of the senate to house bill No. 388 is the statement that this bill, on motion of Senator Newbry, "was recalled from the committee on engrossed and enrolled bills and re-referred to the committee on assessment and taxation." On March 13, 1945, that committee reported "it back with recommendation that it do pass with the following amendments". These amendments included a change of the number "7", which we have already referred to, to the number "5", and also reduced the amount allowed as a deduction from $350 to $250. There were also other minor amendments. On motion of the chairman of that committee, the report was adopted, and on March 15, the bill passsed the senate with those amendments.

The next entry relating to house bill No. 388 appears in the house journal on the date of March 16, 1945. It is a message from the senate to the speaker of the house advising him that the senate had passed the bill "with the following amendments", which amendments are set forth and are identical with the amendments of the senate committee on assessment and taxation in its report of March 13, 1945. There is a further entry that on motion of Representative French, the house concurred in the senate amendments and repassed the bill as amended. The only other entries in the journals concerning this bill are in reference to the signing thereof by the presiding officers of both houses.

The enrolled bill, which is on file with the secretary of state, bearing the signatures of the president of the senate, the speaker of the house, and the governor, does not contain any of the amendments in the March 13th report of the senate committee on assessment and taxation which were included in the bill as passed by

the senate on March 15 and as repassed by the house on March 16. It does, however, contain the amendments included in that committee's report of March 12, which are not shown by either of the journals to have been incorporated in the bill as passed by either house.

Plaintiffs, in support of their contention that chapter 411, *supra,* was never passed by the legislature, and is consequently invalid, rely primarily on *Oregon Business & Tax Research, Inc. v. Farrell,* 176 Or. 532, 159 P. (2d) 822, recently decided by this court. In that case it was pointed out that there is a difference of judicial opinion concerning the effect to be given to an enrolled bill when it is duly authenticated and in the custody of the proper officer. Attention was there directed to *McKinnon v. Cotner,* 30 Or. 588, 49 P. 956, where three different rules are set forth.

In the latter case it is stated that some jurisdictions have taken the view that, unless the legislative journals affirmatively show conformity to the requirements of the constitution in the passage of the bill throughout its several stages, it is not a law; that other jurisdictions have adopted the rule that an enrolled bill, authenticated by the signatures of the presiding officers of the two houses, and by the approval of the governor, and deposited in the public archives, is immune from judicial attack. Another rule, and the one which prevails in this state, is "that the mere silence of the journals as to matters not required by the constitution to be entered therein will not invalidate a law, but it will be presumed in such case that the enrolled act as filed in the office of the secretary of state, if signed by the presiding officers of the two houses, was regularly passed, but if the journals af-

firmatively show that in fact it did not pass, the courts will refuse to recognize it as a valid law."

*Oregon Business & Tax Research, Inc., v. Farrell,* supra, held that the act under attack was invalid for the reason that the journals of both houses showed that the house had refused to concur in a senate amendment which was incorporated in the bill as enrolled. The decision in that case was based on *Currie v. Southern Pacific Co.,* 21 Or. 566, 28 P. 884, and *State of Oregon ex rel., v. Boyer,* 84 Or. 513, 165 P. 587. In the Currie case the senate journal showed that the bill, upon its final passage, received 13 yeas to 11 nays, the constitutional number of votes required to pass a bill being 16. In the Boyer case, the house journal showed that upon the question whether the house should concur in the senate amendments, the vote was 28 yeas to 26 nays, 31 votes being necessary for a concurrence.

In all three cases to which reference has just been made, it appeared affirmatively from the journals that the act in question did not receive the approval of the constitutional number of members of the legislature.

The facts in the case before us are almost identical with those in *McKinnon v. Cotner,* supra. There the enrolled bill under attack was introduced in the house, regularly passed by that body "and duly transmitted to the senate, where, upon its third reading, on February 16, it was by unanimous consent amended by adding section 8, which provides that the act shall take effect and be in force from and after the 1st day of January, 1894, and, as so amended, was duly passed: Senate Journal, p. 782. The original bill, with the amendment, was then returned to the house, and on the same day the amendment was concurred in by that

body, and the bill ordered enrolled: House Journal, p. 928." The only other references found in the journals were the entries showing the enrolled bill was duly signed by the presiding officer of each house. The enrolled bill, signed by the presiding officers and approved by the governor, was filed in the office of the secretary of state. It did not, however, contain § 8 which had been added to the bill by a senate amendment and which amendment had been concurred in by the house. The court, in its opinion, after stating the rules adopted in different jurisdictions, concerning the effect to be given to enrolled bills, continued as follows:

"* * * The question was before this court in Currie v. Southern Pacific Co., 21 Or. 566, (28 Pac. 884); and State v. Rogers, 22 Or. 348 (30 Pac. 74); and the rule there applied is that when it appears from the journals of the legislature that the enrolled act filed in the office of the secretary of state did not in fact receive the requisite number of votes in either house for its passage, the courts will refuse to regard it as a valid law, but the absence of an affirmative showing in the journal to that effect does not affect its validity. In other words, *in order to impeach the validity of such an act it must affirmatively appear from the legislative journals that it did not in fact receive the approval of the constitutional number of the members of the legislature.* Mere silence of the journal is not sufficient. Within this rule, we think the act in question must be regarded as valid. *It nowhere appears in the journal that it did not pass in the form as actually signed by the presiding officers, and now on file in the office of the secretary of state.* It is true, the journals show that in its progress through the legislature an amendment was adopted which is not included in the enrolled act, but the vote by which such amendment was adopted may have been

reconsidered, and the amendment defeated. At least, the courts are bound to presume such to have been the case." Italics supplied.

In *Portland v. Yick,* 44 Or. 439, 75 P. 706, 102 Am. St. Rep. 633, this court had occasion to discuss the cases of *Currie v. Southern Pacific Company,* supra, and *McKinnon v. Cotner,* supra. After stating what was involved in those two cases, the court said:

" * * * Under the doctrine of this court it will not look behind the enrolled bill having the signatures of the presiding officers of the two houses and filed in the office of the Secretary of State, except to determine whether it appears affirmatively from the records of those bodies that the mandatory provisions of the constitution have not been observed in the enactment; and, unless it does so appear, the law will not be declared invalid. Mere silence of the journals as to such requirement will not suffice to overthrow it, unless it might be in a case where the constitution requires an entry in the journal, as the presumption will then obtain that the legislature proceeded regularly and properly."

*State v. Boyer,* supra, contains this significant statement: "We find a multitude of instances where the record is silent on the subject, and in such cases the courts will presume that the constitutional requirement was observed: [Citing *State v. Rogers,* supra; *McKinnon v. Cotner,* supra, and *Portland v. Yick,* supra]. Here the record is not silent. It shows upon its face that only twenty-eight members of the sixty elected voted in favor of the measure."

In *Boyd v. Olcott,* 102 Or. 327, 360, 202 P. 431, it is said:

" * * * Every reasonable presumption is to be made in favor of the regularity of legislative

proceedings. If the Constitution does not require a given proceeding to be entered in the journal, the absence of a record in the journal will not invalidate a law. It will not be presumed from the mere silence of the journal that either house has exceeded its authority or disregarded constitutional requirements in the passage of legislative acts: [Citing Currie v. Southern Pacific Co., supra; State v. Rogers, supra; Portland v. Yick, supra, and Emmons v. Southern Pacific Co., 97 Or. 263, 191 P. 333]. The language used in McKinnon v. Cotner, 30 Or. 588, 592, (49 Pac. 956), is peculiarly applicable to H. J. R. 12 and H. B. 203, and hence we quote from that opinion as follows:

"'The enrolled act as filed with the Secretary of State is signed by the officers of the house and senate required by the Constitution to sign all bills and joint resolutions passed by their respective bodies, and is therefore officially attested in the manner required by the organic law as one that has regularly and duly passed the legislature, and this attestation must prevail, unless the contrary conclusively appears by the journals of their proceedings.'"

The cases of *McKinnon v. Cotner,* supra, and *Boyd v. Olcott,* supra, are cited and quoted from with approval in *Woodward v. Pearson,* 165 Or. 40, 103 P. (2d) 737.

The rule adopted in this state, which has been designated the journal entry rule, *Boyd v. Olcott,* supra, is referred to in 1 Sutherland, Statutory Construction, (3rd Ed.) § 1404, p. 228, as "The affirmative contradiction rule." In discussing this rule, the author has the following to say:

"This rule is a verbal anomaly. It is but a verbal modification of the conclusive presumption rule. Specifically, this rule requires that validity

be given the enrolled bill unless there affirmatively appears in the journals of the legislature a statement that there has not been compliance with one or more of the constitutional requirements. This rule results, as does the conclusive presumption rule, in the sustaining of nearly every statute. Indeed, it is a delusive offer to suggest that a bill may be attacked by an affirmative entry of noncompliance. If there are defects in legislative procedure the defects may appear negatively in the journal, that is, the journal may fail to show that the bill was read a second time or it may fail to show that a proper vote was recorded. But as a practical matter it is unlikely that the journal will disclose affirmatively that the bill was not read or that a vote was not taken."

The author criticizes this rule by stating that "if greater weight should be attached to the enrolled bill, then the conclusive presumption rule should be followed. If absolute verity is undesirable, then the enrolled bill should be accorded only *prima facie* validity and all evidence should be admitted to establish the actual facts." *Ibid.* p. 230.

██ The rule adopted and consistently followed in this state differs very little from the enrolled bill rule. Under the latter rule, an enrolled bill, authenticated by the presiding officers of the two houses, and approved by the governor, and filed with the secretary of state, will be conclusively presumed valid. Under the rule prevailing in this state, such a bill will be conclusively presumed valid unless it appears affirmatively from the journals that the legislature has not complied with some constitutional requirement.

In *Boyd v. Olcott,* supra, it is strongly intimated that it would be advisable in this state to abandon the journal entry rule and adopt the enrolled bill rule in

its entirety. It was not necessary in that case, however, to choose between the two rules, as the resolution and act in question were valid under either rule.

The Supreme Court of the United States in *Field v. Clark,* 143 U. S. 649, 36 L. Ed. 294, 12 S. Ct. 495, in adopting the enrolled bill rule, said:

" * * * We recognize, on one hand, the duty of this court, from the performance of which it may not shrink, to give full effect to the provisions of the Constitution relating to the enactment of laws that are to operate wherever the authority and jurisdiction of the United States extend. On the other hand, we cannot be unmindful of the consequences that must result if this court should feel obliged, in fidelity to the Constitution, to declare that an enrolled bill, on which depend public and private interests of vast magnitude, and which has been authenticated by the signatures of the presiding officers of the two houses of Congress, and by the approval of the President, and been deposited in the public archives, *as an act of Congress,* was not in fact passed by the House of Representatives and the Senate, and therefore did not become a law."

The contention was made in that case that an enrolled act can not be regarded as a law of the United States if the journal of either house fails to show it was passed in the precise form in which it was signed by the presiding officers, and that under any other view it becomes possible for the speaker of the house and president of the senate to impose upon the people as a law a bill that was never passed by congress. This contention was answered in the following manner:

" * * * Judicial action based upon such a suggestion is forbidden by the respect due to a coordinate branch of the government. The evils that may result from the recognition of the principle

that an enrolled act, in the custody of the Secretary of State, attested by the signatures of the presiding officers of the two houses of Congress, and the approval of the President, is conclusive evidence that it was passed by Congress, according to the forms of the Constitution, would be far less than those that would certainly result from a rule making the validity of Congressional enactments depend upon the manner in which the journals of the respective houses are kept by the subordinate officers charged with the duty of keeping them.''

We are not here suggesting that this court adopt the enrolled bill rule. The acts of a coordinate branch of the government should be respected to the greatest possible extent consistent with the constitution, and if any change is to be made in the existing rule, it would be more in keeping with our form of government to adopt the enrolled bill rule than to extend the scope of the present rule.

For the reasons hereinbefore stated, the decree appealed from is affirmed. No costs will be allowed in this court.

LUSK, J., specially concurring.

Prior to our recent decision in *Oregon Business & Research, Inc. v. Farrell,* 176 Or. 532, 159 P. (2d) 822, this court had in but two cases held that an enrolled act filed in the office of the secretary of state could be successfully impeached by entries in the legislative journals. These cases are *Currie v. Southern Pacific Co.,* 21 Or. 566, 28 P. 884, and *State ex rel v. Boyer,* 84 Or. 513, 165 P. 587. In each of them the judgment was based on the affirmative evidence of the legislative journal that the measure in question had failed to receive the

requisite constitutional majority upon its final passage. In the Currie case the court said:

"But when the journals show upon their face that said bill did not receive the requisite vote *upon its final passage,* and for that reason did not pass, it is difficult to see how the official signatures could give it the force and effect of law." (Italics added).

Even though the holding was thus expressly limited, Mr. Justice ROBERT S. BEAN, concurred "with some hesitation" and Mr. Justice LORD "expressed no opinion but reserved his judgment". It is true that in the Boyer case the vote in the house was upon the question of concurring in the senate amendment. But that was the last action upon the bill taken by the house, and it was treated by the court as the vote upon final passage.

We have no such state of facts here, but a situation identical with that in *McKinnon v. Cotner,* 30 Or. 588, 49 P. 956, in which "the journals show that in its progress through the legislature an amendment was adopted which is not included in the enrolled act", 30 Or. 592. The two cases are, therefore, indistinguishable.

The only distinction between *Oregon Business and Tax Research, Inc. v. Farrell* on the one hand, and *McKinnon v. Cotner* and the instant case on the other, is that in the former an amendment which had been rejected appeared in the enrolled bill, while, in the latter two, amendments which had been adopted were not included in the enrolled bill. While it is somewhat difficult for me to perceive that this distinction is a satisfactory basis for a difference in results, I think that the court did not intend to overrule *McKin-*

*non v. Cotner,* in its most recent decision, and I agree, for the reasons stated in the opinion of Mr. Justice BAILEY, that the rule of that case should not be extended. I therefore concur in the decision now announced.

---

KELLY, J., dissenting.

Without intending in any way to be disrespectful to those who differ with me, I am venturing to express one reason controlling upon me why I cannot uphold as a law the measure in suit signed by the presiding officers of the senate and house of representatives and the governor. That reason is that, to take such a course, it is necessary in my opinion to presume that the actions of the senate and the house in passing the measure in a different form were thereafter reconsidered by both branches of the legislature and then the measure was passed by both houses in the form now signed by the presiding officers and the governor.

I cannot gain my own consent to entertain such a presumption for the very simple and unvarnished reason that I do not believe it is true. In plain language, I am convinced that it is false.

The result of upholding as a law the measure signed by the officers mentioned, simply because it was transmitted to the speaker by the chairman of the committee on enrolled bills, is to substitute as the law-making power of this state the four officers mentioned for the ninety members of the legislature who are given law-making power by the constitution.

The objection to considering such a potential result in federal legislation, as expressed in *Field v. Clark* by the Supreme Court of the United States, does not appeal to me as consonant with judicial duty.

The rule applied in *Field vs. Clark* conclusively presumes that a measure transmitted by the chairman of the committee on enrolled bills, and signed by the speaker of the house, the president of the senate and president of the United States is a valid law, and that the history of its course through Congress, as shown by the journals of the respective branches thereof, cannot be considered at all as in any wise challenging its validity. Whatever may have been the attitude of this court in that regard in the days of long ago, such a rule is not now observed. Now, the rule in Oregon is that, where the journals affirmatively show that a purported measure did not receive the approval of both houses, the signatures of the speaker, the president of the senate and the governor are unavailing to give it the effect of a valid law.

On the same day that the case of *Field vs. Clark* was decided, the Supreme Court of the United States rendered a decision in the case of *United States v. Ballin,* et al, 144 U. S. 1, 12 S. Ct. 507, 36 L. Ed. 321. In the opinion of Mr. Justice Brewer, in the Ballin case, we find the following significant statement:

"The constitution (art. 1, § 5) provides that 'each house shall keep a journal of its proceedings;' and that 'the yeas and nays of the members of either house on any question shall, at the desire of one-fifth of those present, be entered on the journal'. Assuming that by reason of this latter clause, reference may be had to the journal, to see whether the yeas and nays were ordered, and if so, what was the vote disclosed thereby; and assuming, though without deciding, that the facts which the constitution requires to be placed on the journal may be appealed to on the question whether a law has been legally enacted, *yet, if reference may be*

*had to such journal, it must be assumed to speak
the truth.''* (Italics supplied.)

Applying that rule here, where concededly refer-
ence may be had to the journals, we should imply
verity to such records. As I understand those records,
the last action disclosed by the journals was the pas-
sage of the bill, not in the form signed by the speaker,
the president of the senate and the governor, but in a
materially and substantially different form.

I can see no distinction between the case, wherein
the last act shown by the journals was that the measure
under consideration was defeated by an adverse vote;
and the case at bar, wherein the only record in the
journals discloses the passage of the measure so
amended in a different manner than shown by the
terms of the measure which was signed by the three
officers mentioned.

To uphold the former, it would be necessary to pre-
sume that, after the legislative bill's defeat, the action
of the legislature so taken was reconsidered and the
bill was passed as signed. To me, that is no more
unreasonable than to presume in the present case that
after the passage of the measure as amended incon-
sistently with the terms of the purported law signed
by the speaker of the house, the president of the senate
and the governor, the actions of both houses in so pass-
ing the bill were reconsidered and thereafter the meas-
ure was passed in the form in which it appears as a
purported law. To me, it is unreasonable to presume
that such reconsiderations could occur and such re-
enactments take place in both branches of the legis-
lature without any record being made thereof in the
journals; and no one whomsoever be found who wit-

nessed such reconsiderations and reenactments or participated therein.

An old-time wheeze illustrating American humor is the incident of a gentleman using the forks of the road as a bootjack. When advised of this, an Englishman is said to have exclaimed: "That is not humor, that is a blooming lie, don't you know." To my way of thinking, the basis of upholding the validity of the purported law in suit is not a presumption, but a falsehood.

For this reason, I dissent.

_____

BRAND, J., dissenting.

I dissent. The majority of the court appears to entertain some dissatisfaction with the journal entry rule which we so recently approved in the Farrell case. The court does not, however, repudiate that rule nor does it suggest the adoption of the enrolled bill rule.

I agree that the journal entry rule should control the decision. The respect which we owe to a co-ordinate branch of the government is a respect for what the legislature does, not for what it is mistakenly said to have done. Our problem relates merely to the proper meaning and application of the journal entry rule.

I agree that in order to impeach the validity of the enrolled bill it must affirmatively appear that it did not receive the approval of the constitutional number of the members of the legislature. I also agree that "mere silence of the journal is not sufficient." But if it appears affirmatively from the journals that the mandatory provisions of the constitution have not

been observed, then we should declare the purported act invalid.

I am unable to find any real distinction between the case at bar and the Farrell case. In the latter case, H. B. 403 was introduced, amended and approved by the House. The bill went to the Senate where it was again amended and passed. The House and Senate amendments were different and mutually inconsistent. The House refused to concur in the Senate amendments, and the bill went to a conference committee which reported the bill out with amendments different from that adopted by the Senate. Both House and Senate then passed the bill with the conference amendment. The enrolled bill did not contain the amendments which were actually adopted and did contain the Senate amendments which had been rejected by the House. We held that the journal affirmatively showed that the enrolled bill had never been adopted.

In the case at bar, House Bill 388 passed the House and went to the Senate. On March 12 the committee recommended that it do pass with an amendment. The report was adopted. Thereafter House Bill 388 was recalled from the Committee on Engrossed and Enrolled Bills and rereferred to the Committee on Assessment and Taxation. The approval previously given to that bill as amended on March 12 was thereby rescinded. The amendment of March 12 died in the committee, and in my opinion the journal affirmatively shows it. House Bill 388, the only bill bearing that number, came out of the committee on March 13 with new and different amendments and without the amendment of March 12. The amendment of March 12 changed "7" to "6" in two places. Could that amendment live on as a separate entity divorced from its

context? Obviously not. When House Bill 388 came out of the committee with the March 13 amendments, it affirmatively showed that the March 12 amendments had died in committee. Thereafter House Bill 388 as amended on March 13 passed both houses.

The enrolled Bill 388 contains the rejected March 12 amendments and omits those of March 13 which were actually adopted. There is a strong presumption that the enrolled bill was duly enacted. There is. also a strong presumption that the journal is correct. It is certified as such by the same legislative officers who signed the enrolled bill, and it is our duty to take judicial notice of its contents. If the journal were in fact silent, we would undoubtedly uphold the enrolled bill.

But when it speaks—when it shows that H. B. 388 received the affirmative vote of a constitutional majority of the members of both houses and shows further that the March 12 amendment was excluded from the bill—I think we have an affirmative demonstration in the journal that the March 12 amendment was rejected by the legislature. The passage of H. B. 388 in the form shown by the journal negatives the passage of the same numbered bill in any other form.

The rejection of the March 12 amendment appears just as affirmatively and conclusively here as did the rejection of the Senate amendment in the Farrell case.

There is much to be said in favor of the enrolled bill rules which frankly establishes an arbitrary standard. But public corporations ordinarily speak by their duly authenticated minutes which are the best evidence and are ordinarily not to be altered by parol. The journal entry rule is not an arbitrary one, but is based upon the judicial desire to ascertain the truth

concerning the actual, not the presumed, will of the legislature.

The silence of the journals will not alone impeach the validity of the enrolled bill. Yet when they affirmatively disclose that the bill as passed is different from the bill as enrolled, I think we should examine the journal to see if there has been any reconsideration of the apparently final action taken. No reconsideration appears.

There is but one escape from the logic of the situation and that is to presume without evidence that both houses reconsidered the final vote on the bill and then both adopted H. B. 388 with the March 12 amendment. This the court did in *McKinnon v. Cotner*. This the court could have done but did not do in the Currie case and the Boyer case. This the court could have done in the Farrell case but we refused to do it. If we refused to presume that the House *reconsidered* its rejection of the Senate amendment in the Farrell case, why should we presume that both Senate and House reconsidered their final action in the case at bar?

I think the Farrell case was rightly decided, that it overruled the McKinnon case and is controlling here.

The result reached by the majority in this case may be economically desirable, but an occasion might arise when the application of the rule of the majority would seriously thwart the legislative will. I see no reason for presuming that to have been intended which was so obviously the result of a blunder.