408                    December 27, 2011                    No. 49

IN THE OREGON TAX COURT
REGULAR DIVISION

THE CITY OF SEATTLE,
a municipal corporation of the State of Washington,
acting by and through its City Light Department,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4946 & TC 4957)

CITY OF TACOMA,
a municipal corporation of the State of Washington,
acting by and through its
Department of Public Utilities, Light Division,
dba Tacoma Power,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4958)

PUBLIC UTILITY DISTRICT NO. 1
OF SNOHOMISH COUNTY, WASHINGTON,
a municipal corporation of the State of Washington,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4959)

Plaintiffs (taxpayers) appealed ad valorem property tax assessments on certain utility service agreements, arguing mainly that because certain legislation originated in the Oregon Senate, its revenue raising provisions could not be enforced. Cross-motions for summary judgment were made on four issues involving the federal and Oregon constitutions and a federal law. Granting the department's motion on three of the issues and denying both parties' motions on the fourth, the court ruled that: the substantive concerns regarding the Origination Clause issue were satisfied in the adoption of the revenue raising provisions in SB 495 because the principle and operative language as to extension of taxation was first proposed by the House and the Senate agreed with the actions of the House;

that the court did not have in the record any agreement of the type that would present constitutional issues as to the Commerce Clause; that Oregon property tax is levied only on property and not on or in respect of business activities such as generation or transmission of electricity; and that because property taxation is an area that has been traditionally occupied by the states, and the provisions of Article I, section 9, clause 4 of the federal constitution prohibit the imposition of a property tax by the federal government, there was no conflict between state and federal law as to the Supremacy Clause issue.

Oral argument on cross-motions for summary judgment was held September 19, 2011, in the courtroom of the Oregon Tax Court, Salem.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, filed the motion and argued the cause for Plaintiffs (taxpayers).

Melisse S. Cunningham, Senior Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant (the department).

Decision for Defendant rendered December 27, 2011.

## HENRY C. BREITHAUPT, Judge.

### I.   INTRODUCTION

This case is before the court on cross-motions for partial summary judgment. The parties have filed a partial stipulation of facts, the provisions of which are set forth below.

### II.   FACTS

Plaintiffs (taxpayers) are municipal corporations created under the law of the State of Washington and generally operating within Washington. Each of the taxpayers entered into agreements with the Bonneville Power Administration (BPA) pursuant to which each taxpayer obtained the right to transmit power on the transmission system operated by BPA. The parties agreed at the hearing on this matter that those agreements (each referred to as a Capacity Ownership Agreement or COA) are in all material respects identical to the agreements at issue in *Power Resources Cooperative v. Dept. of Rev.*, 330 Or 24, 996 P2d 969 (2000).

Previously, Defendant (the department) sought to extend the holding of *Power Resources* to these taxpayers and collect from them property tax in respect of the property interest in Oregon that they possessed by reason of the COAs. *See PUD No. 1 of Snohomish County v. Dept. of Rev.,* 17 OTR 290 (2004). That litigation ended by reason of Oregon Laws 2005, chapter 832, a statute that exempted foreign municipal corporations from taxation in respect of COAs.

The exemption accomplished under the 2005 legislation was again the subject of legislative consideration in 2009. In that year, Senate Bill 495 (SB 495) was introduced in the Oregon Senate. As introduced, the bill would have broadened the exemption established in 2005 so as to have it apply to electric cooperatives. *See* SB 495 A-Engrossed (2009). After passage in the Oregon Senate, SB 495 proceeded to the Oregon House of Representatives where it was subjected to a "gut and stuff" procedure. The expanded exemption provisions were "gutted" and in their place were "stuffed" provisions repealing the exemptions adopted in 2005. *See* SB 495 B-Engrossed (2009). As so altered, the bill was passed by the Oregon House of Representatives and returned to the Senate, which concurred with the changes made in the House and passed the bill. SB 495, as amended by the House and passed by both legislative chambers was then signed by the Governor. *See* Or Laws 2009, ch 804.

In their filings with the court, taxpayers asserted that the Eugene Water and Electric Board (EWEB) was a party to a COA but not subject to tax. Taxpayers conceded at the hearing on this matter that EWEB is not a party to a COA. They further conceded that although EWEB is a party to some agreement with BPA, that agreement is not in this record.

## III.   ISSUE

Are either taxpayers or the department entitled to summary judgment on any or all of the following questions:

(1)   Was SB 495 adopted in violation of Article IV, section 4 of the Oregon Constitution (the Origination Clause)?

(2)   Does taxation of taxpayers' property by Oregon violate Article I, section 8, clause 3 of the United States Constitution (the Commerce Clause)?

(3)   Does taxation of taxpayers' property by Oregon violate the provisions of 15 USC section 391 (15 USC § 391)?

(4)   Does taxation of taxpayers' property violate the provisions of Article VI, clause 2 of the United States Constitution (the Supremacy Clause)?

## IV.   ANALYSIS

### A.   *Origination Clause Issue*

The Origination Clause of the Oregon Constitution provides:

"Bills may originate in either house, but may be amended, or rejected in the other; except that bills for raising revenue shall originate in the House of Representatives."

Or Const Art IV, § 18 (2010).

The Origination Clause in Oregon closely parallels the Origination Clause in the United States Constitution. *Cf.* US Const, Art I, § 6, cl 1 ("All bills for raising revenue shall originate in the House of Representatives; but the Senate may propose or concur with amendments as on other Bills."). The parties agree that there is no governing precedent as to the precise issue in this case relating to origination of wholesale amendments by the House, either under Oregon law or under federal law.

The purposes of the Origination Clause are well understood. Bills raising revenue "are required to have their origin in the lower branch of the legislature because it is the more numerous of the two bodies, and, being oftener renewed by elections, presumptively it more closely and directly represents the people." *Northern Counties Trust v. Sears*, 30 Or 388, 401, 41 P 931 (1895).

For purposes of this analysis, although the parties differ on this, the court will assume that SB 495 raises revenue. Taxpayers maintain that because SB 495 originated in the Senate, its revenue raising provisions cannot be enforced.

The vehicle constituting SB 495, although created in the Senate, had its entire cargo relating to raising revenue loaded on in the House. Indeed, as the vehicle came to the House its cargo, far from being a raising of revenue, was further extension of tax exemptions. Accordingly, all of the substantive concerns that lay behind the Origination Clause are satisfied. The burden of taxation on the people originated in the House and emanated from that body.

The court is of the view that taxpayers' position exalts form over substance. That is a concern in many cases, but it is of special concern when a court is reviewing the propriety of the acts of a coordinate branch of government. Oregon courts do not treat compliance with the Origination Clause as a political question beyond review, as would some. *See U.S. v. Munoz-Flores*, 495 US 385, 401, 110 S Ct 1964, 109 L Ed 2d 384 (1990) (Stevens, J. concurring). However, the courts in Oregon have adopted deferential rules in the consideration of Origination Clause cases for the very reason that such rules are appropriate in judging the compliance of the legislature with procedural requirements in the legislative process. *See Young v. Galloway*, 177 Or 617, 164 P2d 427 (1945).[1] All of the substantive concerns of the Origination Clause were satisfied in the adoption of the revenue raising provisions in SB 495. The principle and operative language as to extension of taxation was first proposed by the House and the Senate agreed with the actions of the House.

A virtually identical analysis was employed in *Baines v. New Hampshire Senate President*, 152 NH 124, 876

---

[1] In *Young* the court refused to adopt a rule under which compliance with constitutional requirements had to affirmatively appear in the legislative record. Instead the court followed a rule that compliance was presumed unless a failure to comply with constitutionally required procedural requirements affirmatively appeared in the legislative journals. *Young,* 177 Or at 621-22. Throughout the opinion in *Young*, the court acknowledges the need to show proper deference to the legislative branch. Although *Young* was not an Origination Clause case, taxpayers cite to *Young* for the proposition that courts are not permitted to go beyond journal entries and into the substance of legislative action to test compliance of legislative actions with the constitution. The court in *Young* did not authorize a search of records for a reason to strike down legislation. It, however, did not proscribe a review of the substance of the legislative actions in order to establish compliance with constitutional requirements and the focus of the court on respect for and deference to the legislative branch indicates that such a thorough review in the process of confirming validity is justified.

A2d 768 (2005). In that case, the revenue raising provisions of a piece of legislation were first added to a bill when it was in a conference committee. *Id.* at 126. The conference committee had a majority of members from the house of representatives and the conference bill, treated as only a suggestion to the legislative chambers, was ultimately approved, first by the house and then by the senate. *Id.* The Supreme Court of New Hampshire found there to be no violation of the origination clause concerns of the New Hampshire constitution. *Id.* at 139-40.

As to the Origination Clause motions, the cross-motion of the department is granted and the motion of taxpayers is denied.

B.  *Commerce Clause Issue*

The attack by taxpayers in their motion and briefs was premised on there being differential treatment by Oregon of COAs to which foreign municipal corporations are parties and a COA to which EWEB, an Oregon municipal corporation, was a party. Given the concession of taxpayers that EWEB is not party to a COA and that the agreement that EWEB has with BPA is not part of this record, the motion of taxpayers on this issue must be denied.

As to its cross-motion on this issue, the department asks the court to issue a ruling based on an assumption, for purposes of this case, that an Oregon municipal corporation was a party to a COA and yet not subject to taxation by reason of the provisions of ORS 307.090. The court is of the view that such a ruling would be in the nature of an advisory opinion. Further, as to whether agreements of the type to which EWEB is a party present constitutional issues, the fact is that the court does not have in this record any agreement to which EWEB is a party. Accordingly, the cross-motion of the department on this issue is denied.

C.  *The 15 USC section 391 Issue*

15 USC section 391 provides:

"No State, or political subdivision thereof, may impose or assess a tax on or with respect to the generation or transmission of electricity which discriminates against

out-of-State manufacturers, producers, wholesalers, retailers, or consumers of that electricity. For purposes of this section a tax is discriminatory if it results, either directly or indirectly, in a greater tax burden on electricity which is generated and transmitted in interstate commerce than on electricity which is generated and transmitted in intrastate commerce."

This statute must be read strictly as it purports to impinge on the power of sovereign states to impose taxation. *See Ann Sacks Tile & Stone, Inc. v. Dept. of Rev.*, 20 OTR 377, (2011). The reading taxpayers propose, that a generally applicable tax on property is a "tax on or with respect to generation or transmission of electricity" is by no means a strict reading. The Oregon property tax is levied only on property, not on or in respect of business activities such as generation or transmission of electricity. The tax in question here has none of the features of the tax found to be violative of the statute in *Arizona Public Service Co v. Snead,* 441 US 141, 60 L Ed 2d 106 (1979).

This court finds applicable and persuasive the reasoning and conclusions of the court in *PP&L v. Dept. of Revenue*, 773 P2d 1186 (Mont 1989), *cert den*, 493 US 1050 (1990). In addition, taxpayers have introduced no legislative history or other indication that in adopting 15 USC section 391, Congress sought to have it apply to an ad valorem property tax. It is simply the case that the tax levied on the property in question here would in no way be affected by reason of taxpayers here engaging or not engaging in any given level of generation or transmission.

The motion of taxpayers is denied on this issue and that of the department is granted.

D.   *Supremacy Clause Argument*

Taxpayers argue that inherent in the Supremacy Clause is the principle that a federal law that conflicts with state law will preempt the state law. Preemption can occur explicitly or where Congress is considered to have so occupied a field that there is no room for contrary state legislation or other action. *English v. General Electric Co.*, 496 US 72, 110 S Ct 2270, 110 L Ed 2d 65 (1990). Taxpayers do

not claim that the federal statutes to which they refer, those dealing with electric power and more specifically with the generation and transmission of electricity in the Northwest, contain any explicit preemption.

As to field preemption:

"(w)here *** the field which Congress is said to have preempted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be "'clear and manifest.'"

*Id*. at 79.

Property taxation is certainly an area that has been traditionally occupied by the states. Indeed, the provisions of Article I, section 9, clause 4 of the federal constitution prohibit, as a practical matter, the imposition of a property tax by the federal government. This court can find, in the materials with which it has been presented, no basis for concluding that there was a "clear and manifest" Congressional intent to displace the power of the states to levy ad valorem property taxes on property involved in the areas as to which Congress has legislated and which have been cited by taxpayers. Indeed, if this argument of taxpayers were to be successful, a levy of property taxes on the properties of investor owned utilities located, in all respects, in Oregon would be prohibited. That is not the law. *Cf. PP&L v. Montana Dept of Rev*, 237 Mont 77, 773 P2d 1176 (1989), *cert den*, 493 US 1050 (1990) (upholding a state-imposed beneficial use tax on use of BPA-owned power lines by owners of electric generating plants).

As to this issue, the motion of taxpayers is denied and that of the department is granted.

### V. CONCLUSION

Now, therefore,

IT IS ORDERED that as to the Origination Clause issue, Plaintiffs' motion is denied and Defendant's cross-motion is granted;

IT IS FURTHER ORDERED that as to the Commerce Clause issue both motions are denied;

IT IS FURTHER ORDERED that as to the 15 USC § 391 issue Plaintiff's motion is denied and Defendant's cross-motion is granted; and

IT IS FURTHER ORDERED that as to the Supremacy Clause issue Plaintiff's motion is denied and Defendant's cross-motion is granted.